**Robert W. WEATHERFORD, Sr., Appellant (Defendant Below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 48S00–9602–CR–149.

Supreme Court of Indiana.

June 30, 1998.

Caroline B. Briggs, Flora, for Appellant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Robert W. Weatherford, Sr., appeals the trial court's denial of his motion to withdraw his sentencing agreement. We affirm.

## Facts and Procedural Posture

On October 17, 1995, a jury convicted Weatherford of murder and conspiracy to commit murder. After the judge entered the judgment of conviction, but prior to the penalty phase of his capital trial, Weatherford entered into a sentencing agreement with the State. In the agreement, Weatherford admitted killing the victim to prevent him from testifying against Weatherford in other criminal matters.[1] (R. at 28.) The State agreed not to pursue the death penalty in exchange for Weatherford's acceptance of a sentence of life without parole. (*Id.*)

The court held a hearing on October 18, 1995, to consider accepting the agreement. Weatherford indicated he had read and signed the document. (R. at 41.) The judge invited counsel to suggest how to proceed further. The prosecutor recommended that "someone ought to at the minimum examine him to make sure he understands the terms of the agreement...." (R. at 42.) The judge stated he would read the agreement to Weatherford paragraph by paragraph and ask him if he had read and understood each. (R. at 42–43.) Defense counsel and Weatherford agreed to that procedure. (R. at 43.)

The judge then read the clauses of the agreement. Weatherford verbally acknowledged that he had read each term and understood it. (R. at 42–56.) The court advised Weatherford that it could either accept or reject the sentencing agreement, but that if it accepted the agreement it would be bound by it. (R. at 44.) Weatherford stated that he believed the sentencing agreement was in his best interest and acknowledged that he was satisfied with the performance of his defense. (R. at 50.) He stated that he understood that he was waiving all his rights to appeal the agreement.[2] (R. at 49–50.) The court advised Weatherford that either the court or the jury would have to find the existence of an aggravating circumstance beyond a reasonable doubt before imposing a sentence of life without parole. (R. at 52–54.) Weatherford stated that he understood his right to present mitigation evidence, and voluntarily waived that right. (R. at 55.) He also acknowledged that he received no promises or inducements to enter into the sentencing agreement. (R. at 51.)

On November 13, 1995, Weatherford filed a motion to withdraw his sentencing agreement, arguing primarily that he had not knowingly and voluntarily entered into the agreement. (R. at 30–36.) Following a hearing on the motion, on November 15, 1995, the trial court denied the motion to withdraw the sentencing agreement and, in accordance with the terms of the agreement, sentenced Weatherford to life without parole.[3] (R. at 177–78.)

## Statement of the Issue

Weatherford requests now that we reverse the trial court's adverse ruling on his motion to withdraw the sentencing agreement.[4] The

1. During the hearing on the sentencing agreement, Weatherford told the court that he did not admit that he personally shot the victim. (R. at 51–52.)

2. Clause eleven of the agreement reads: "The Defendant, Robert William Sydney Weatherford, Sr., understands that by entering into this agreement that he waives all appeal rights." (R. at 29.) While the agreement also purported to waive all of Weatherford's rights to pursue post-conviction remedies, (R. at 29), the case at bar does not require us to determine the validity of that provision.

3. The court declined to sentence Weatherford for conspiracy to commit murder, though the agreement stated Weatherford would receive forty-five years on that count. (R. at 178.)

4. The State correctly points out that a defendant who has pleaded guilty may not generally challenge the plea on direct appeal, citing *Tumulty v. State*, 666 N.E.2d 394, 396 (Ind.1996) ("[P]ost-conviction relief is exactly the vehicle for pursuing [challenges to plea agreements]."). This principle applies to sentencing agreements as well as guilty pleas, inasmuch as sentencing agreements qualify as "plea agreements" under the statutory definition: "an agreement between

propriety of the trial judge's denial of the motion to withdraw is the sole and dispositive issue in the current appeal.

## Standards of Review for Withdrawal of Pleas

Where a defendant pleads guilty under an agreement with the State, the Indiana Code provides standards governing requests to withdraw:

> After entry of a plea of guilty, or guilty but mentally ill at the time of the crime, but before the imposition of sentence, the court may allow the defendant by motion to withdraw his plea of guilty ... for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea.... The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion.[5] However, the court shall allow the defendant to withdraw his plea ... whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

Ind.Code Ann. § 35–35–1–4(b) (West 1998). We have interpreted this statute to *require* a trial court to grant such a request:

> only if the defendant proves that withdrawal of the plea "is necessary to correct a manifest injustice." The court must *deny* a motion to withdraw a guilty plea if the withdrawal would result in substantial prejudice to the State. Except under these polar circumstances, disposition of the petition is at the discretion of the trial court.

"Manifest injustice" and "substantial prejudice" are necessarily imprecise standards, and an appellant seeking to overturn a trial court's decision has faced a high hurdle under the current statute and

its predecessors. The trial court's ruling on a motion to withdraw a guilty plea arrives in this Court with a presumption in favor of the ruling.

*Coomer v. State*, 652 N.E.2d 60, 61–62 (Ind. 1995) (citations omitted).

■ On its face, section 35–35–1–4(b) does not apply to sentencing agreements tendered after a jury has found a defendant guilty. Nevertheless, the standards imbedded in the statute seem appropriate for the situation. The primary objectives—justice and judicial economy—are at work in both instances. Therefore, trial court rulings on motions to withdraw plea and sentencing agreements arrive in this Court with the same presumption of validity, and will be reviewed only for an abuse of discretion. As we previously stated, abuse of discretion will only be found as to plea and sentencing agreements when the failure of the trial court to grant the motion would result in either a manifest injustice to the defendant[6] or in substantial prejudice to the State.

An appellant of an adverse decision on a motion to withdraw must prove the court abused its discretion by a preponderance of the evidence. Ind.Code Ann. § 35–35–1–4(e) (West 1998). In evaluating a defendant's arguments on this point, "[w]e will not disturb the trial court's ruling where it was based on conflicting evidence." *Smith v. State*, 596 N.E.2d 257, 258 (Ind.Ct.App.1992).

## Review of the Ruling on Weatherford's Motion to Withdraw

Weatherford made several arguments supporting his request to withdraw his sentencing agreement. (R. at 30–38.) On appeal, he offers three: 1) that his plea was made invol-

---

a prosecuting attorney and a defendant concerning the disposition of a felony or misdemeanor charge." Ind.Code Ann. § 35–35–3–1 (West 1998). Weatherford may, however, appeal the trial court's ruling on his motion to withdraw.

**5.** Use of abuse of discretion as a standard for reviewing such decisions has long been a part of Indiana law. *See, e.g., Centers v. State*, 501 N.E.2d 415, 417 (Ind.1986); *Owens v. State*, 426 N.E.2d 372, 375 (Ind.1981); *Brown v. State*, 261 Ind. 50, 300 N.E.2d 83, 85 (1973); *Ketring v. State*, 209 Ind. 618, 622, 200 N.E. 212, 214

(1936); *Myers v. State*, 115 Ind. 554, 558, 18 N.E. 42, 44 (1888).

**6.** *See, e.g., Vonderschmidt v. State*, 226 Ind. 439, 81 N.E.2d 782 (1948) (holding that a defendant must be allowed to withdraw plea entered while intoxicated); *Cassidy v. State*, 201 Ind. 311, 168 N.E. 18 (1929) (holding that the trial court abused its discretion denying motion to withdraw guilty plea where defendant of "low intellectuality" was "induced to plead guilty" by judge and others, and told that appointment of attorney "would do him no good").

untary and unknowing by the trial court's failure to advise him of his rights; 2) that his plea was invalid because it lacked a factual basis; 3) that "jury irregularities" unknown to him at the time the agreement was made rendered his plea unknowing and involuntary.

A. *Failure to Advise of Rights and Voluntariness of Plea.* In the motion to withdraw, Weatherford argued that his sentencing agreement was made unknowingly and involuntarily because the trial court had neither advised him of his rights before accepting the plea, as required by Indiana Code section 35–35–1–2,[7] (Appellant's Br. at 6), or determined that the agreement was made voluntarily, as required by Indiana Code section 35–35–1–3(a), (Appellant's Br. at 9).

Facially, these sections apply only to pleas of guilty or guilty but mentally ill. *See* Ind. Code Ann. § 35–35–1–2 (West 1998); Ind. Code Ann. § 35–35–1–3 (West 1998). Weatherford in effect argues that the formal requirements imposed by section 35–35–1–2 when accepting guilty pleas should apply when accepting sentencing agreements.[8] Unlike the procedures section 35–35–1–4(b) discussed above, little reason exists for wholesale application of the requirements of section 35–35–1–2 to sentencing agreements. A defendant like Weatherford for example, who has already been convicted, need not be informed that by entering into a sentencing agreement he waives his rights to "a public and speedy trial by jury," Ind.Code Ann. § 35–35–1–2(a)(2)(A) (West 1998), or that he waives his right to "require the state to prove his guilt beyond a reasonable doubt at a trial at which defendant may not be com-

pelled to testify against himself," Ind.Code Ann. § 35–35–1–2(a)(2)(D) (West 1998).

To be sure, when it appears to the trial judge that a sentencing agreement is the product of coercion or ignorance, the court would likely reach the conclusion that the agreement should be set aside to prevent a "manifest injustice." It might also decide that this was a "fair and just reason" to permit withdrawal.

■ In Weatherford's case, however, the trial court was well justified in refusing to set aside the agreement on these grounds. The record of the earlier proceeding reflected that some care had been taken. After inviting counsel's advice on how to proceed, the judge told the parties he intended to read the terms of the agreement aloud, and ask Weatherford whether he had read and understood them. (R. at 42–43.) Defense counsel responded, "Mr. Weatherford said that would be fine with him," (R. at 43), and Weatherford himself responded, "That is fine with me your Honor," (*Id.*). The judge then read the terms, and Weatherford responded that he had read and understood them all. (R. at 43–55.) At one point, Weatherford's counsel stopped the judge specifically to note that Weatherford did not admit that he personally shot the victim. (R. at 52.) When asked if he voluntarily waived his right to present mitigation evidence, Weatherford responded, "Yes, I understand it and I agree with it." (R. at 55.) Throughout the questioning, Weatherford was apparently attentive and responsive.

■ Weatherford's attempt to show that his sentencing agreement was involuntary

---

7. Section 35–35–1–2(a) states, among other things, that a court may not accept a guilty pleas without first determining that the defendant:
  (1) understands the nature of the charges against him;
  (2) has been informed that by his plea he waives his right to:
    (A) a public and speedy trial by jury;
    (B) confront and cross-examine the witnesses against him;
    (C) have compulsory process for obtaining witnesses in his favor; and
    (D) require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself. . . .

Ind.Code Ann. § 35–35–1–2 (West 1998).

8. Weatherford also argues it was wrong to deny his request to withdraw his agreement because the court failed to advise him of his *"Boykin* rights," referring to *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). According to *Boykin,* a trial court must be satisfied that an accused is aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers before accepting a guilty plea. *Id.* at 243, 89 S.Ct. at 1712. Section 35–35–1–2 codifies the principles of *Boykin,* so the statutory discussion above resolves Weatherford's *Boykin*-based arguments.

and unknowing is insufficient to demonstrate that withdrawal of the agreement was necessary to correct a manifest injustice. The court's method of inquiry seems appropriate. It did not abuse its discretion in denying Weatherford's motion on those grounds.[9]

*B. Not the Triggerman.* Weatherford argues that the trial court should not have accepted his guilty plea because he maintained at the sentencing agreement hearing that he was not the triggerman in the murder.[10] Weatherford cites cases holding that a defendant may not plead guilty and maintain his innocence simultaneously, such as *Patton v. State*, 517 N.E.2d 374 (Ind.1987), and *Ross v. State*, 456 N.E.2d 420 (Ind.1983).

 Of course, one may still be guilty of murder without actually committing the act of deadly force. *See, e.g., Taylor v. State*, 676 N.E.2d 1044, 1047 (Ind.1997). Weatherford admitted in the agreement that "the victim ... was a person known by him to be a witness against him and the murder was committed with the intent to prevent [the victim] from testifying against Defendant...." (R. at 28.) Weatherford acknowledged in open court that he had read and understood this portion of the agreement. (R. at 45–46.) These were hardly grounds demonstrating that withdrawal of the agreement was necessary to prevent a manifest injustice.

*C. Jury Irregularities.* Weatherford asked the trial court to grant his motion to withdraw because of alleged "jury irregularities." (Appellant's Br. at 24.) According to Weatherford, the jurors feared for their lives during his trial, a fact he did not discover until after sentencing. Weatherford raised these claims in his motion to withdraw

his sentencing agreement. (R. at 34–35.) Thus, argues Weatherford, the trial court abused its discretion by denying his motion to withdraw despite these known "irregularities." (*Id.* at 25.)

Weatherford apparently bases his arguments on a local newspaper article describing a fire alarm at the juror's motel, and anonymous jurors' claims of fear. (Appellant's Br. at 25; Appendix to Appellant's Br. at 10.) Weatherford can point to no other "evidence" of juror irregularities other than the newspaper article and his own assertions. The article and Weatherford's contentions, standing alone, are not a cogent argument as required by Indiana Appellate Rule 8.3(A)(7), nor are they sufficient to overcome the presumption of validity afforded the trial court's ruling on the motion to withdraw.

### Conclusion

Weatherford's contentions do not establish that his agreement represented a "manifest injustice" and the trial court was within its discretion to refuse his request to withdraw it. We affirm.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.

---

9. In his motion to withdraw, Weatherford also claimed that his ingestion of prescription medication and lack of sleep rendered his decision unintelligent and involuntary. (R. at 31–32.) Weatherford offers no evidence that he ingested medication or that medication rendered his decision involuntary other than his assertions to that effect. (Reply Br. of Appellant at 5–6.) Furthermore, Weatherford's claims were brought into question by the testimony of his nurse, (R. at 125), and the claim that he got no sleep prior to the making of the agreement was controverted by the testimony of a Deputy Sheriff, (R. at 118). On appeal, we will not reweigh the evidence, and

"[w]e will not disturb the trial court's ruling where it was based on conflicting evidence." *Smith*, 596 N.E.2d at 258.

10. He claims that the only aggravator used to justify the sentencing agreement was that he killed the victim to prevent the victim from testifying against him. (Appellant's Br. at 16.) Weatherford argues that the lone aggravator was not supported by the facts, as is required by Indiana Code section 35–35–1–3, because he never admitted that he personally pulled the trigger.