Rainier L. JOHNSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9910–CR–613.

Supreme Court of Indiana.

Aug. 29, 2000.

N. Sean Harshey, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Rainier Johnson pled guilty while he was on trial for murder. He changed lawyers before sentencing and asked to withdraw his plea. The trial court refused to let him do so and proceeded to impose sentence.

Besides challenging these decisions, Johnson also seeks to claim that his first lawyer provided ineffective representation, notwithstanding the rule that one who pleads guilty cannot seek to set aside the plea on direct appeal. As with other kinds of contentions concerning pleas, we hold Johnson's claim should be heard through post-conviction relief. In the end, we affirm.

### Facts

Johnson confessed to police that on September 25, 1997, he went to the home of his boyfriend, Fred Raymundo. Raymundo offered Johnson fellatio, but Johnson said he "just wasn't in the mood." (R. at 338.) Raymundo mocked Johnson until Johnson "just couldn't help [him]self and ... hit Fred." (*Id.*) After Johnson knocked Raymundo to the ground, he "choked him for about [five] minutes." (*Id.*) Raymundo did not get up, so Johnson moved him to the garage and went home to watch television. The next morning, Johnson went back to the garage, collected Raymundo, and buried him in a cornfield. Then he "went back home and relaxed for a while." (R. at 338.)

Johnson took Raymundo's car and drove to Raymundo's apartment in Denver, Colorado. There, he took some of Raymundo's possessions, including a television. Using credit cards either owned solely by or jointly with Raymundo, Johnson charged expensive purchases including furniture for Johnson's girlfriend/fiancée's apartment. When Raymundo's mother returned from a trip, Johnson lied to her about Raymundo's whereabouts.

On November 11th, Johnson confessed to the killing and took police to the cornfield where he buried Raymundo. The following day, the State charged Johnson with murder. The prosecutor eventually added five more counts, including criminal deviate conduct, confinement, and child molesting.

The police later questioned Mike Myers, who was present during the killing and helped Johnson move and bury the body. The record indicates Myers would have testified that Johnson choked Raymundo, put a plastic bag over his head and pushed his head under water in a bathtub to be sure he was dead.[1] Myers pled guilty to conspiracy to commit murder.

By contrast, Johnson proceeded to trial on the murder charge. On the first day, Johnson decided to plead guilty to murder in return for the State's agreement to dismiss all other counts.

By the time of his sentencing hearing, Johnson had obtained his present lawyer. He sought to withdraw his plea of guilty. At that hearing Johnson again largely admitted the above actions, but he denied choking Raymundo, saying, "I did not squeeze Fred's neck at all.... It was sort of a grip I had just to hold him down."

(R. at 326.) He also refused to admit to sexually molesting Myers. Johnson said that the only reason he pled guilty was that he felt his former counsel pressured him. The Court denied Johnson's motion to withdraw his plea, and sentenced him to sixty-five years.

## I. Withdrawal of Guilty Plea

Johnson claims that manifest injustice resulted from the trial court's failure to permit him to withdraw his guilty plea. Beyond claiming his counsel pressured him, he says the court did not accurately ascertain whether there was an adequate factual basis for the plea, and that the physical evidence does not contradict Johnson's version of the events of the killing.[2]

*A. Standard of Review.* The Code provides a standard to apply when a defendant pleads guilty pursuant to an agreement with the State, and then requests to withdraw the plea:

> After entry of a plea of guilty ..., but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea ... for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea.... The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea ... whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

Ind.Code Ann. § 35–35–1–4(b) (West 1986 & Supp.1997).

 A trial court abuses its discretion as to plea agreements only "when the fail-

---

1. Myers also said that Johnson sexually molested him and forced him to have sex with other men when he was twelve to fourteen years old.

2. Johnson also claims that "the state's strategic timing in filing felony charges based on nothing more than self-serving accusations by a prisoner seeking leniency on his own case, must give rise to a genuine question of the

propriety of Mr. Johnson's guilty plea." (Appellant's Br. at 13.) He provides no further explanation of why this "strategic filing" amounted to a manifest injustice necessitating the approval of his request to withdraw his plea. We need not address such a claim without argument. Ind. Appellate Rule 8.3(A)(7).

ure of the trial court to grant the motion would result in either a manifest injustice to the defendant or in substantial prejudice to the State." *Weatherford v. State,* 697 N.E.2d 32, 34 (Ind.1998). The trial court's ruling on a motion to withdraw a guilty plea arrives in our Court with a presumption in favor of the ruling. *Coomer v. State,* 652 N.E.2d 60, 62 (Ind.1995). One who appeals an adverse decision on a motion to withdraw must therefore prove the trial court abused its discretion by a preponderance of the evidence. *Weatherford,* 697 N.E.2d at 34. We will not disturb the court's ruling where it was based on conflicting evidence. *Id.*

■ *B. Pressure to Plead Guilty and Inquiry About the Plea.* Johnson says his lawyer pressured him to plead guilty over the lunch hour on the first day of trial, because that morning the court ruled to admit extremely damaging evidence about Johnson's character. Johnson also claims that once the plea agreement was submitted, the judge did not attempt to ascertain accurately whether there was a substantial basis.

Judge Magnus–Stinson questioned Johnson extensively about the plea. After swearing Johnson in, the judge double checked Johnson's signature and asked whether Johnson had read the entire agreement and discussed it with his attorney before signing. She asked whether Johnson could read and write English well enough to understand the agreement. She asked him whether he understood that he did not have to plead guilty and that in Indiana a defendant cannot plead guilty and at the same time deny committing the crime. To each of these questions, Johnson answered yes.

The judge also asked him whether anyone forced him to enter the plea. She asked whether anyone made any threats or promises to induce him to plead guilty. She asked whether Johnson was under the influence of drugs or alcohol. To these questions, he answered no. She informed him that the sentencing range for the crime was forty-five to sixty-five years. He indicated that he understood the potential punishment. Finally, Judge Magnus–Stinson asked why he was entering into the plea agreement, and Johnson replied, "I think it's in my best interest." (R. at 203.)

The answers Johnson gave while pleading guilty belie his later assertion that the only reason he entered a guilty plea is because his counsel pressured him. *Coomer,* 652 N.E.2d at 63. Johnson acknowledged in open court that he read and understood the plea agreement. His responses were more than sufficient to indicate that his plea was voluntarily entered as "in his best interest." The record does not demonstrate that permitting withdrawal of the agreement was necessary to prevent a manifest injustice.

*C. Physical Evidence.* Johnson claims that the physical evidence does not contradict his version of the events on the night of the killing. The prosecutor countered that much of the forensic evidence that would have proved or disproved Johnson's story was obliterated when Johnson buried the victim's body. Faced with conflicting versions of the killing and limited physical evidence to back up either story, we cannot find that the trial court abused its discretion in accepting the State's account. *Weatherford,* 697 N.E.2d at 34 (reviewing court will not disturb trial court's ruling on withdrawal of guilty plea if based on conflicting evidence).

■ *D. Simultaneous Guilty Plea and Claim of Innocence.* It is true that a trial court cannot accept a guilty plea from a defendant who pleads guilty and maintains his innocence at the same time. *Ross v. State,* 456 N.E.2d 420, 423 (Ind.1983). A trial court may, however, accept a guilty plea from a defendant who pleads guilty in open court, but later protests his innocence. *Moredock v. State,* 540 N.E.2d 1230, 1231 (Ind.1989). In this case, John-

son did not claim his innocence until nearly six weeks after he pled guilty.[3]

Johnson has not overcome the presumption of validity accorded the trial court's denial of his motion to withdraw his guilty plea. The court's refusal in this case is well within its discretion, and we cannot say that it constituted manifest injustice.

## II. Sentencing

■ Johnson claims that his sentence is manifestly unreasonable. This contention requires that we consider all valid aggravating and mitigating factors to consider whether the sentence imposed was manifestly unreasonable in light of the nature of the offense and the character of the offender. *Allen v. State*, 720 N.E.2d 707, 715 (Ind.1999); Ind. Appellate Rule 17(B).

■ We review sentences with the knowledge that reasonable minds may differ about what sentence is appropriate in any given case. *Allen*, 720 N.E.2d at 715. We generally defer to a trial court's sentencing determination.

■ *A. Aggravators.* Johnson complains that in sentencing him, the trial court found non-statutory aggravating circumstances. In a non-capital case, however, a "trial court [i]s well within the law to consider ... non-statutory aggravator[s]." *Sauerheber v. State*, 698 N.E.2d 796, 807 (Ind.1998). The aggravating criteria listed in Ind.Code § 35–38–1–7.1(b) are not exclusive; that is, the statute does not limit the matters a court may consider in determining a sentence. *Ajabu v. State*, 722 N.E.2d 339, 344 n. 8 (Ind.2000).

■ The trial court found that Johnson was at high risk of committing another crime, and that he was completely lacking in remorse. It cited Johnson's appropriation of Raymundo's property after the killing as evidence of Johnson's risk of recidivism and his callousness. The court also discussed the nature and circumstances of the crime: Johnson hit the victim, probably choked him, and buried him, greatly compromising the ability to determine the cause of death. Finally, it relied on Johnson's "failure to seek first aid for [Raymundo] when [he] knew something was wrong." (R. at 401.)[4] We consider these statements well within the appropriate consideration of the trial court.

■ *B. Mitigators.* While the court found no mitigating factors, a trial court is not obliged to accept as mitigating each of the circumstances a defendant offers up. "Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was improperly overlooked." *Legue v. State*, 688 N.E.2d 408, 411 (Ind. 1997) (citing *Jones v. State*, 467 N.E.2d 681, 683 (Ind.1984)).

■ Johnson urged three mitigating circumstances at sentencing: (1) lack of significant criminal history, (2) good character and low propensity to future crime, and (3) financial support of his children. Judge Magnus–Stinson rejected all three.

As to criminal history, Johnson does not argue that he has no criminal background, but rather that his criminal record is not significant. We agree with the trial court that this factor neither cuts in favor of

---

3. Johnson seeks refuge in *Patton v. State*, 517 N.E.2d 374, 376 (Ind.1987) (court should not sentence on plea from capital defendant when defendant denies intent to kill). *Patton* illustrates the great care required in capital cases. We have *not* held that a subsequent protestation of innocence in a non-capital case requires that a trial court automatically permit a defendant to withdraw his guilty plea. We decline to do so today. Instead, we continue to hold that in non-capital cases, only "a plea of guilty tendered by one who *in the same breath* protests his innocence ... is no plea at

all." *Harshman v. State*, 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953). (emphasis added).

4. Johnson also argues that the trial court improperly considered that his fiancée was underage when their first child was conceived. (Appellant's Br. at 20; R. at 397.) The court did not find this circumstance to be an aggravating factor, and did not appear to place any undue weight upon it.

Johnson nor against him. (R. at 400 ("Your prior criminal history is not a factor in my mind.").)[5] We cannot say that the trial court abused its discretion in declining to find the defendant's prior criminal behavior a mitigating circumstance. *See, e.g., Warlick v. State,* 722 N.E.2d 809, 813 (Ind.2000); *Bacher v. State,* 722 N.E.2d 799, 804 (Ind.2000) (both finding under facts analogous to present case that record did not compel lack of criminal history mitigator).

The trial judge also considered Johnson's propensity for future criminal behavior and determined that, if anything, it was aggravation evidence. (R. at 399 ("I do think that the potential if you don't get your way on another occasion for you to [resort] to a criminal act ... [,] it's a high likelihood.").) Judge Magnus–Stinson did not abuse her discretion in determining that Johnson's claimed antipathy to future crime did not amount to valid mitigation.

The trial court found the defense did not present evidence that Johnson "did anything financial to support [his] dependents." (R. at 400.) Upon review of the record, we agree. In the absence of such evidence, this circumstance is not a significant mitigator. *See, e.g., Wilkins v. State,* 500 N.E.2d 747, 749 (Ind.1986) (no financial support mitigator compelled by record when "there is no evidence of defendant's pattern of prior support to his dependents nor a showing that they would suffer undue hardship as a result of his imprisonment.").

On appeal, Johnson presents four additional potential mitigators: his cooperation with authorities, willingness to testify about the last hours of the victim's life, apologies and remorse, and the circumstances surrounding the killing.[6] (Appellant's Br. at 22–25.) He did not urge any

of these upon the trial judge, and the record suggests that none of them were compelled.[7]

Whatever weight they might have is not dispositive. It is often the case that while a mitigator "may have been entitled to some weight, it does not command a change in the sentence." *Page v. State,* 689 N.E.2d 707, 712 (Ind.1997).

 *C. Aggravators v. Mitigators.* A single aggravating circumstance may be sufficient to support the enhancement of a presumptive sentence. *Price v. State,* 725 N.E.2d 82 (Ind.2000). As there are no mitigating factors, the significant aggravators adequately support the trial court's sentence enhancement.

### III. Ineffective Assistance of Counsel

 Johnson claims that his former counsel was ineffective because counsel opened the door to otherwise inadmissible character evidence, admitted that Johnson caused the victim's death, and pressured Johnson to plead guilty. We recently reiterated the rule that "when a defendant pleads guilty, he may challenge only sentencing errors on direct appeal, not alleged errors involving his guilty plea or conviction." *Prowell v. State,* 687 N.E.2d 563, 564 n. 1 (Ind.1997), *cert. denied,* 525 U.S. 841, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998) (emphasis omitted).

Creating an exception to this rule by permitting defendants to challenge the plea through IAC claims on direct appeal would be a particularly bad idea for most defendants. Such a claim litigated at this stage would necessarily rise or fall based only on the record generated in open court during the guilty plea. A claimant would thus not have "the type and extent of

---

**5.** Johnson had previously been convicted of theft and criminal conversion. (Supp. R. at 419.)

**6.** Johnson also offers a fifth circumstance, lack of extensive violent criminal history, but we addressed it earlier in this subsection.

**7.** It is true, for example, that Johnson initially cooperated with authorities by offering a confession, but he later retracted certain key statements to which he had sworn in his confession.

248

evidentiary hearing afforded at a post-conviction proceeding ... designed to allow [an] appellant an opportunity to establish the factual assertions he makes concerning his guilty plea." *Crain v. State,* 261 Ind. 272, 273, 301 N.E.2d 751, 751–52 (1973). This significant handicap is among the reasons we observed that post-conviction is generally the preferred forum for adjudicating an ineffectiveness claim. *Woods v. State,* 701 N.E.2d 1208, 1219 (Ind.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).

Moreover, a prisoner who litigates a trial counsel ineffectiveness claim under this handicap will find that res judicata bars him from raising it more comprehensively in a collateral proceeding. *Sawyer v. State,* 679 N.E.2d 1328, 1329 (Ind.1997) (The defendant, "having once litigated his Sixth Amendment claim concerning ineffective assistance of counsel, is not entitled to litigate it again, by alleging different grounds.").

The present case demonstrates the wisdom of this approach. Counsel for Johnson effectively acknowledges that he cannot prove a Sixth Amendment violation under the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); he is reduced to arguing for "a new hybrid standard that acknowledges the vast area that exists between flawless representation and the current standards required to demonstrate ineffective assistance of counsel." (Appellant's Br. at 27.)

The instant claim is not available on direct appeal.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM and RUCKER, JJ., concur.