## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2018, 10:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey Hunter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 30, 2018

Court of Appeals Case No.
18A-CR-1267

Appeal from the
Putnam Circuit Court

The Honorable
Matthew L. Headley, Judge

Trial Court Cause No.
67C01-1612-F1-305

**Kirsch, Judge.**

[1] Jeffrey Hunter appeals from the trial court's denial of his motion to withdraw his plea of guilty to attempted murder.[1] On appeal, he raises the following issue: whether the denial of his motion to withdraw his guilty plea resulted in a manifest injustice because 1) his plea was not knowing and voluntary and 2) there was no factual basis that he shot the victim and intended to kill him.

[2] We affirm.

## Facts and Procedural History

[3] On December 10, 2016, Hunter tried to buy a chainsaw from a Tractor Supply Company store, but his credit card was denied. *Appellant's App. Vol. 2* at 15. Hunter grabbed the chainsaw and left the store, pushing aside two customers who tried to stop him and striking a store employee who also tried to thwart his departure. *Id.* at 15-16. Putnam County Deputy Donnie Pettit pursued Hunter back to Hunter's residence, where Cloverdale Officer Luke Brown ("Officer Brown"), Greencastle Officer Daryl Bunten, and Putnam County Deputy Elizabeth Campbell arrived to help. *Id.* at 16. Inside the house, Hunter was yelling so loudly that the officers could hear him from the driveway. *Id.* Hunter was arguing with his mother, who wanted him to go outside to talk to the police. *Id.* at 17.

---

[1] Ind. Code § § 35-42-1-1, 35-41-5-1.

[4] The officers made contact with Hunter at the front door of his residence. Hunter opened the glass storm door, continued to complain in a loud voice, and failed to cooperate. *Id*. at 16. The officers saw a double-barreled shotgun leaning in a corner directly beside the doorway, and Officer Brown attempted to pull Hunter out of the house. *Id.* A struggle ensued in which Hunter pulled Officer Brown through the threshold of the home, and moments later, Officer Brown fell backwards outside the house. *Id.* As Officer Brown stood up, Hunter grabbed the shotgun, leveled it at Officer Brown, and fired it into Officer Brown's chest from approximately one foot away, striking him in his protective vest. *Id.* Officer Brown retreated from the doorway and fired two rounds with one round striking Hunter in the left side of his stomach. *Id.* at 17.

[5] On December 13, 2016, the State charged Hunter with Level 1 felony attempted murder, Class A misdemeanor theft, Level 6 felony resisting law enforcement, Class B misdemeanor battery, Level 5 felony battery by means of a deadly weapon, and Level 3 felony aggravated battery. *Id*. at 18-23. The trial date was eventually set for March 7, 2018, fourteen months after the date that Hunter was charged. During those intervening fourteen months, the trial court twice extended the deadline for a plea agreement, once at the request of both parties and once at the request of Hunter. *Id*. at 7-8.

[6] At some point before he pleaded guilty, Hunter, accompanied by his attorney and his father, met with the prosecutor in the prosecutor's office to discuss a plea deal. *Id*. at 18. In discussing a potential plea, the prosecutor discussed

with Hunter the evidence and arguments the State would use if the case went to trial. *Id*. at 18-19.

[7] On March 1, 2018, Hunter entered a plea agreement by which he would plead guilty to attempted murder, the State would dismiss the remaining two felony counts and the two misdemeanor counts, and Hunter would receive a twenty-year sentence. *Appellant's App. Vol. 2* at 24. At his guilty plea hearing Hunter confirmed that: 1) he intended to plead guilty; 2) nothing was affecting his ability to think or reason; 3) no one coerced him to plead guilty; 4) he was waiving his rights; and 5) there was nothing else he thought his attorney should have done for him. *Tr. Vol. 2* at 4-5.

[8] At the guilty plea hearing, the following colloquy occurred between the prosecutor and Hunter:

> Q. And you're admitting that you shot Officer Luke Brown with a shotgun. Is that right?
>
> A. Yes. I did raise the gun, and it was fired, yes.
>
> Q. And you're admitting that you were somewhere from about two to six feet away. You raised the shotgun, shot it, you hit him in the chest at close range. Is that right?
>
> A I'm not positive, but I know it was around ten feet.
>
> Q. A close distance. Is that right?
>
> A. Yes, sir.

Q. And you're admitting that constitutes a substantial step towards that commission of the crime. Is that right?

A. That's correct, sir.

*Id.* at 5-6. The trial court took Hunter's guilty plea under advisement and set a sentencing hearing.

At Hunter's May 3, 2018 sentencing hearing, his counsel informed the trial court for the first time that Hunter wanted to withdraw his plea because he believed that he was forced into taking the plea and that he was not guilty of attempted murder. *Id.* at 14. Thus, Hunter contended that 1) his plea was not knowing and voluntary and 2) there was no factual basis for attempted murder, more particularly claiming that he did not have specific intent to kill Officer Brown.

In support of his claim that his plea was not knowing and voluntary, Hunter said he felt pressured to accept the plea for three reasons. First, he claimed that he believed the purpose of the meeting with the prosecutor was to review the State's evidence against him, not negotiate a plea. *Id.* at 18. Second, he claimed that the one-hour meeting with the prosecutor did not give him enough time to decide whether he should plead guilty. *Id.* Third, after the trial court had denied Hunter's motion to withdraw his plea, Hunter argued during allocution that his father had pressured him to plead guilty. *Id.* at 24. However, in arguing that he was pressured to plead guilty, Hunter said only

that he was "rushed," not that he was coerced. *Id*. at 18. The following colloquy occurred between the State and Hunter:

> Q. Mr. Hunter, what duress was -- you said there was -- or your attorney said there was duress used against you, or you said that, to get you to plead guilty.

> A. I just -- I felt that it was rushed. I was under the impression that we were just coming over to listen to what the arguments that you had were, and then I would decide later if I was going to take the plea agreement. And everything was just done right then. I really didn't have time to think about it.

> Q. So you don't feel duress; you felt rushed now. Is that right?

> A. Yes, that's correct. I -- I don't know that I had time to really consider the plea . . . [.]

> . . . .

> Q. But is it safe to say nobody forced you or under duress made you sign that plea agreement? You did that of your own free will?

> A. I was under the impression that I couldn't get anything better, and that this was all that was going to be—ever be given.

*Id.* at 18-19.

[12] As to his claim that he lacked specific intent to kill Officer Brown, the following exchange occurred between Hunter and his attorney at the sentencing hearing:

Q. And the reason why you want to withdraw the guilty plea is because you do not believe that you intended to kill. Is that correct?

A. That's correct. You said that I formed a specific intent in just a few seconds, and that's what the Court is trying to say, and I just -- I do not believe that I have ever wanted anyone to die. I mean, I'm not a murderer, so I just can't see – it's just unfathomable to me.

. . . .

Q. Okay. And so based upon all that -- and I've told you that intent can be inferred from actions. You understand that?

A. Yes, I guess I understand.

Q. Okay. So still with all that, you are adamant that you did not form specific intent to kill, and therefore you're stating that you -- that is the reason why you can't withdraw the -- or you want to withdraw the plea and you can't plead guilty. Is that correct?

A. That's correct.

*Id.* at 16-17.

[13]   The trial court denied Hunter's request to withdraw his plea. As to Hunter's claim that he was coerced into pleading guilty because he was rushed, the trial court found as follows:

I find that this was a specific plea. You knew exactly what you were going to get if the Court accepted it. I can't find that you

had any coercion because you had at least a one-hour meeting with your attorney and the prosecutor and your dad to talk about all of this.

. . . .

You say you were rushed, but you weren't rushed at all. I mean, I remember sitting here three or four times waiting on your lawyer and the state's lawyer and yourself before I could come in to court on the case because they kept asking me to have additional time to talk to you about the case. I can't find that you had any coercion because you had at least a one-hour meeting with your attorney and the prosecutor and your dad to talk about all of this.

*Id.* at 21.

[14] As to Hunter's claim that there was no factual basis that he intended to kill Officer Brown, the trial court found that Hunter's intent could be inferred from his actions. *Id.* It concluded that withdrawal of the plea was not necessary to prevent a manifest injustice. *Id.*

[15] Later during allocution, Hunter contended: 1) "I had no intention of hurting anyone," 2) "I felt threatened for my life," 3) "I wouldn't have gotten the gun out if I didn't think my mom's life was in danger by the guy that was chasing me," 4) "I had no intention of firing at any person," and that 5) he did not believe there was a factual basis for attempted murder but that there was a factual basis for aggravated battery, to which he would have pleaded guilty. *Id.* at 23-24. Hunter now appeals.

# Discussion and Decision[2]

A motion to withdraw a guilty plea filed before a person is sentenced is governed by Indiana Code section 35-35-1-4(b), which provides:

> After entry of a plea of guilty, or guilty but mentally ill at the time of the crime, but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea. The motion to withdraw the plea of guilty or guilty but mentally ill at the time of the crime made under this subsection shall be in writing and verified. The motion shall state facts in support of the relief demanded, and the state may file counter-affidavits in opposition to the motion. The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

*Id.*; *see also Weatherford v. State*, 697 N.E.2d 32, 34 (Ind. 1998). "[T]he moving party has the burden of establishing his grounds for relief by a preponderance of the evidence." Ind. Code § 35-35-1-4(e). "The trial court's ruling on a motion to withdraw a guilty plea arrives in our Court with a presumption in favor of

---

[2] We agree with the State that Hunter has waived review of the denial of his motion to withdraw his guilty plea because he did not file a written and verified motion but instead only made an oral request. "The motion to withdraw the plea of guilty or guilty but mentally ill at the time of the crime made under this subsection shall be in writing and verified." Ind. Code § 35-35-1-4(b); see also *Carter v. State*, 739 N.E.2d 126, 128 n.3 (Ind. 2000). Nonetheless, we choose to address Hunter's claims on the merits.

the ruling." *Johnson v. State*, 734 N.E.2d 242, 245 (Ind. 2000). In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we examine the statements made by a defendant at his guilty plea hearing to decide whether his plea was offered "freely and knowingly." *See Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995). "A trial court abuses its discretion as to plea agreements only 'when the failure of the trial court to grant the motion would result in either a manifest injustice to the defendant or in substantial prejudice to the State.'" *Johnson*, 734 N.E.2d at 244-45 (quoting *Weatherford*, 697 N.E.2d at 34). Instances of manifest injustice include a plea that was not knowing and voluntary. I.C. § 35-35-1-4(c)(3); *see also Jeffries v. State*, 966 N.E.2d 773, 778-79 (Ind. Ct. App. 2012).

[17] A sufficient factual basis to support a guilty plea exists when there is evidence about the elements of the crime from which a trial court reasonably could conclude that the defendant is guilty. *Oliver v. State*, 843 N.E.2d 581, 588 (Ind. Ct. App. 2006), *trans. denied*. An adequate factual basis may be established by the defendant's acknowledgement that he understands the nature of the charges and that his plea is an admission of the charges. *Id.* Additionally, the standard for a sufficient factual basis is less rigorous than that required to support a conviction. *Rhoades v. State*, 675 N.E.2d 698, 701-02 (Ind. 1996). A factual basis may be established by relatively minimal evidence about the elements of the crime from which the court could reasonably conclude that the defendant is guilty. *Graham v. State*, 941 N.E.2d 1091, 1098 (Ind. Ct. App. 2011). "With regard to the crime of attempted murder, it has long been held that the specific

intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm." *Miller v. State*, 106 N.E.3d 1067, 1074 (Ind. Ct. App. 2018), *trans. denied*.

### *Manifest Injustice – Plea Not Knowing and Voluntary*

[18]    Hunter argues that withdrawal of his guilty plea is necessary to prevent a manifest injustice because his plea was not knowing and voluntary.

[19]    He first argues that his plea was not knowing and voluntary because he thought his attorney was going to procure a deal to plead guilty to aggravated battery, not attempted murder. *Appellant's Br*. at 21; *Tr. Vol. 2* at 24. During allocution, Hunter said: "I was under the impression that [my attorney] was going to get the aggravated battery [deal], and that's what I thought it was going to be." *Tr. Vol. 2* at 24.

[20]    Hunter's second argument that his plea was not knowing and voluntary is that he was "rushed" into pleading guilty. *Id.* at 18. In support, he refers to the meeting where he and his lawyer met with the prosecutor for just one hour and where he claims he was surprised that the meeting was for negotiation of a plea deal. *Id*. at 18. Hunter claims he felt even more pressure to plead guilty because his father also attended the meeting and had been pressuring Hunter to plead guilty. *Id.* at 24.

[21]    We reject Hunter's claim that his plea was not knowing and voluntary. First, the guilty plea hearing shows that Hunter was fully aware that he was pleading guilty to attempted murder. Hunter signed a written plea agreement specifying

that he was pleading guilty to attempted murder, that all remaining counts would be dismissed, and that he was to receive a twenty-year executed sentence. *Appellant's App. Vol. 2* at 24-25. In the acknowledgment of rights in the plea agreement, Hunter declared, "I believe this agreement to be in my best interest." *Id.* at 25. At the guilty plea hearing, the trial court asked Hunter if he intended to plead guilty to attempted murder, and Hunter responded, "That's correct, sir." *Tr. Vol. 2* at 4. Hunter was then asked by the State, "Mr. Hunter, you're here today to plead to the count of attempted murder, a Level 1 felony. Is that right?" *Id.* at 5. Hunter responded, "That's right, sir." *Id.* Hunter never sought clarification about the offense to which he was pleading guilty; likewise, he did not claim that the agreement was not what he thought it was until much later during his allocution at the sentencing hearing, which occurred after the trial court had already denied his motion to withdraw his plea. Thus, Hunter's claim that he thought his counsel was going to obtain a plea for aggravated battery is not supported by the record. *Compare Johnson*, 734 N.E.2d at 245 (record belied defendant's claim that he pleaded guilty only because his attorney pressured him to do so; defendant acknowledged that he read and understood the plea agreement; this was sufficient to indicate his plea was voluntarily entered and that denying motion to withdraw plea did not result in manifest injustice).

[22] Second, the record shows that Hunter was not coerced into pleading guilty. Before Hunter and his attorney met with the prosecutor, the case had been pending for more than one year, and the trial court had twice extended the

deadline for the parties to file a plea agreement. *Appellant's App. Vol. 2* at 3-8. After all that time, the fact that the time for Hunter to decide whether to plead guilty after a one-hour meeting strikes us as hardly unusual or unreasonable. Thus, it was reasonable for the trial court to conclude that Hunter had sufficient time to consider whether a plea agreement was in his best interest and to also conclude that Hunter was not coerced, or even "rushed," into pleading guilty. *Tr. Vol. 2* at 18-19.

[23] Hunter "has failed to show that his plea was not knowing and voluntary and that withdrawal of his plea was necessary to prevent a manifest injustice on that basis. *See* I.C. § 35-35-1-4(c)(3); *Jeffries*, 966 N.E.2d at 778-79. He freely and knowingly" pleaded guilty to attempted murder. *See Coomer*, 652 N.E.2d at 62.

### *Manifest Injustice – Guilty Plea Lacked Factual Basis*

[24] Hunter next argues that affirming the denial of his motion to withdraw his guilty plea will result in a manifest injustice because the guilty plea hearing did not establish a factual basis for attempted murder. Specifically, he claims that there was no factual basis that he fired the shotgun at Officer Brown and that he had the requisite specific intent to kill Officer Brown. In support, he refers to his exchange with the prosecutor:

> Q. And you're admitting that you shot Officer Luke Brown with a shotgun. Is that right?
>
> A. Yes. I did raise the gun *and it was fired*, yes.

*Tr. Vol 2* at 5 (emphasis added).

[25] We reject Hunter's claim that this testimony did not establish a factual basis that he shot the gun and intended to kill Officer Brown. Hunter's argument rests largely on his somewhat ambiguous admission that "it [the gun] was fired." This admission, standing alone, is sufficient to establish a factual basis that he shot Officer Brown and intended to kill him, especially considering the less rigorous standard to establish a factual basis for a guilty plea than to support a conviction after a trial. *See Rhoades*, 675 N.E.2d at 702. Moreover, the broader context of the "it was fired" statement reinforces that there was a factual basis that Hunter shot Officer Brown and intended to kill him.

> Q. And you're admitting that you shot Officer Luke Brown with a shotgun. Is that right?
>
> A Yes. I did raise the gun and it was fired, yes.
>
> Q. And you're admitting that you were somewhere from about two to six feet away. You raised the shotgun, shot it, you hit him in the chest at close range. Is that right?
>
> A. I'm not positive, but I know it was around ten feet.
>
> Q. A close distance. Is that right?
>
> A. Yes, sir.
>
> Q. And you're admitting that constitutes a substantial step towards that commission of the crime. Is that right?

A. That's correct, sir.

*Tr. Vol. 2* at 5-6. This acknowledgment by Hunter established a factual basis because it showed that Hunter understood the nature of the attempted murder charge and that his plea was an admission to that charge. *See Oliver*, 843 N.E.2d at 588.

[26] Finally, since "it has long been held that the specific intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm," *Miller*, 106 N.E.3d at 1074, the trial court reasonably concluded that there was an adequate factual basis for attempted murder. Despite Hunter's protestation of innocence during allocution, the trial court reasonably concluded that Hunter fired the gun and that his specific intent to kill Officer Brown could be inferred from his use of the gun,. *See Oliver*, 843 N.E.2d at 588; *compare Carter*, 739 N.E.2d at 131 (no abuse of discretion in denying withdrawal of a guilty plea when the defendant admitted guilt at plea hearing, and later proclaimed his innocence at the sentencing hearing); *compare also Owens v. State*, 426 N.E.2d 372, 374-75 (Ind. 1981); *Gross v. State*, 22 N.E.3d 863, 868-69 (Ind. Ct. App. 2014); and *Harris v. State*, 671 N.E.2d 864, 869 (Ind. Ct. App. 1996).

[27] The foregoing facts amply satisfy the standard that a "factual basis may be established by relatively minimal evidence about the elements of the crime from which the court could reasonably conclude that the defendant is guilty." *Graham,* 941 N.E.2d at 1098. Hunter has failed to demonstrate that withdrawal

of his plea was necessary to prevent a manifest injustice because of an allegedly inadequate factual basis, and he also failed to demonstrate that withdrawal of his plea was necessary because his plea was allegedly not knowing and voluntary.

[28] Affirmed.

Vaidik, C.J., and Riley, J., concur.