**Clarence WEBB, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9812–CR–992.**

Court of Appeals of Indiana.

Aug. 17, 1999.

Timothy J. Miller, Marion County Public Defender, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael R. Mclaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Clarence Webb appeals his conviction of possession of cocaine, a class D felony, and possession of marijuana, a class A misdemeanor, claiming the trial court erred in denying his motion to suppress.

We reverse.

### FACTS

At about 12:15 a.m. on July 14, 1998, Officer Reddy of the Indianapolis Police Department was on patrol in the 10100 block of East Hastings Drive when he observed Webb standing next to a car parked in the parking area of an apartment complex. When Webb saw the officer, he "turned his body away" and appeared to be "putting something down his pants." (R. 44). Officer Reddy immediately exited his police car, "handcuffed [Webb] for officer safety reasons, thinking there might be a weapon," and "patted him down." *Id.* Officer Reddy "felt what was immediately apparent to [him] to be a narcotic in his groin area" and "recovered a baggy of a substance, which, through [his] training and experience as a police officer, [he] believed to be marijuana." *Id.* Further testimony revealed that Officer Webb recovered the marijuana from the crack between Webb's buttocks. Subsequently, in a search incident to arrest, another officer found a bag containing crack cocaine on Webb's person.

Webb was charged with possession of marijuana and of cocaine. Webb moved to suppress the evidence as being the product of an illegal search. In response to Webb's questioning, Officer Reddy testified that he had not seen Webb commit any criminal act. Officer Reddy agreed that "putting your hands down the front of your pants [wa]s ... not a crime." *Id.* When asked the basis for the search, Reddy pointed to Webb's "furtive movements" of "turn[ing] his back to me in an attempt to hide something from me," and his knowledge that "gun crimes," "murders," "reports of shots fired," and "drug activity" occurred in that area. (R. 47). The trial court denied Webb's motion to suppress, and he was convicted after a bench trial.

### DECISION

Webb claims the trial court erred in denying his motion to suppress because the officer lacked grounds for a *Terry* stop. We agree.

The Fourth Amendment to the United States Constitution guarantees " '[t]he right of the people to be secure in their persons ... against unreasonable search and seizures.' " *Parker v. State,* 697 N.E.2d 1265, 1267 (Ind.Ct.App.1998). Generally, a search must be reasonable and conducted pursuant to a properly issued warrant. *Id.* When a search is conducted without a warrant, the State bears the burden of proving the search was justified under one of the limited exceptions to the warrant requirement. *Id.* Pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 911 (1968), police may—without a warrant—stop an individual for investigatory purposes if, based upon specific, articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 27, 88 S.Ct. 1868. Such reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Id.* We consider the totality of circumstances in determining whether the police had reasonable suspicion to believe there was criminal activity afoot. *Carter v. State,* 692 N.E.2d 464, 467 (Ind.Ct.App.1997).

Webb contends he was stopped based on Officer Reddy's "observation of the defendant turning away from him and making hand motions in front of his body," Webb's Brief at 1, an insufficient basis for a *Terry* stop. The State responds that furtive reactions by defendants upon becoming aware of

police presence have been held to justify an investigatory stop, citing *Hailey v. State*, 521 N.E.2d 1318, 1319–20 (Ind.1988), and *Wilson v. State*, 670 N.E.2d 27, 30–31 (Ind.Ct.App. 1996). In *Hailey*, the officer saw a man walking in the business district at 1:30 a.m. on a November night; upon observing the officer watching him, the man changed direction and increased his speed. This "combination of time and place and the actions of the person in question" at the time of the stop led our supreme court to conclude that the investigatory stop was warranted. 521 N.E.2d at 1320. In *Wilson*, the defendant also fled upon being observed by police, and this flight *together with* his "presence in a high crime area" constituted circumstances supporting "the claim by the officers that they had a reasonable suspicion to believe criminal activity was afoot." 670 N.E.2d at 31. Thus, in both cases cited by the State, an effort to evade contact with the police was made by the defendant. No such evasive action was taken here. Also, Webb was standing by a car in the parking area of an apartment complex shortly after 12:00 on a summer night—not a particularly suspicious "time and place." *See Hailey.*

■ The State also brings to our attention Officer Reddy's testimony that as he approached Webb, he "noticed wrappers commonly used to wrap and smoke marijuana lying on the ground near" Webb. State's Brief at 4. What Officer Reddy said was that he "looked down" and "noticed ... tobacco and wrappers from a cigar" as he approached Webb, and that "cigar wrapper paper" could be filled with marijuana. (R. 44, 45). However, he did not testify that the wrappers and tobacco were near Webb. Moreover, Reddy had already explained that he stopped Webb because of his having turned away and moved his hands in the front of his body. Further, when asked whether "based upon him putting his hands in his pants," he had decided to search him, Officer Reddy answered, "I handcuffed and patted him down." (R. 46). Thus, we agree with Webb that the State has imputed to Officer Reddy a new theory for the stop despite Reddy's own testimony as to why he stopped Webb.

■ Finally, the State argues that Webb's presence in a high crime area supports a "reasonable inference that criminal activity may have been occurring." State's Brief at 5. This argument lacks a nexus between the very real possibility that some crime might have been occurring in the area and the necessary articulable facts from Officer Reddy leading him to believe that Webb was involved in a crime. Thus, as we held in *Tumblin v. State*, 664 N.E.2d 783, 785 (Ind. Ct.App.1996), turning away from an officer does not constitute reasonable suspicion for a *Terry* stop.

Officer Reddy expressly stated that he stopped Webb because when Webb saw him, he turned away from him and appeared to put something down his pants. Webb's action of turning away cannot sustain a *Terry* stop. *Id.* Moreover, presence in a high crime area combined with the actions of turning away and an individual's "movement toward his waistline" do not sustain "a suspicion that criminal activity was afoot." *Stalling v. State*, 713 N.E.2d 922, 925 (Ind.Ct.App. 1999).

We reverse.

KIRSCH, J., and BROOK, J., concur.