**Franklin D. TURNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 79A04–0507–CR–370.**

Court of Appeals of Indiana.

March 10, 2006.

938

Harold E. Amstutz, Lafayette, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Franklin Turner pleaded guilty to Dealing in Cocaine, as a Class A felony. He presents a single issue for our review, namely, whether the trial court should have granted his motion to withdraw his guilty plea because it was necessary to correct a manifest injustice. We hold that because Turner's case was not yet final, and he has a credible defense under the new constitutional rule announced in *Litchfield v. State,* 824 N.E.2d 356 (Ind.

2005), his motion should have been granted.

We reverse and remand.[1]

### FACTS AND PROCEDURAL HISTORY

On August 21, 2003, a police officer in Tippecanoe County filed an affidavit for a search warrant, in which he described possible drug activity at 676 Harrison Circle in Dayton. The officer stated that the Dayton Town Marshall, ("Town Marshall"), had contacted him and advised him that the Town Marshall had received some complaints that there might be drug dealing at that residence. Based on that information, the officer and a detective with the Lafayette Police Department went to the residence and noticed that trash bags had been left near the curb for pickup. The officers retrieved four white trash bags, examined their contents, and discovered several marijuana cigarettes and stems that appeared to be from marijuana plants.

One week later, the officers returned and found more trash bags at the curb. Once again, they examined the contents of the bags and found more stems from marijuana plants. Based on what they had discovered in the trash bags, the officers sought a search warrant for the residence. The trial court granted the warrant and officers from the Lafayette Police Department executed it. Once inside the residence, they discovered Turner. Turner acknowledged that he lived there and stated that "there was no more marijuana as it had all been used." Appellant's App. at 12. In the garage, the officers discovered cocaine. The officers arrested Turner, and the State charged him with dealing in cocaine, as a Class A felony; possession of cocaine, as a Class A felony; possession of

---

1. Turner also argued that the trial court abused its discretion when it imposed a sentence of twenty-five years with five years suspended, but because we reverse and remand, we do not address that claim.

marijuana, as a Class A misdemeanor; possession of paraphernalia, as a Class A misdemeanor; maintaining a common nuisance, as a Class D felony; and possession of a controlled substance, as a Class C felony.

On August 9, 2004, Turner pleaded guilty to dealing in cocaine, as a Class A felony. The trial court took his plea under advisement and scheduled a sentencing hearing. Before the sentencing hearing, Turner filed a motion to suppress and a motion to withdraw his guilty plea because, according to Turner, new case law provided him with a credible defense that was unavailable at the time he had entered his guilty plea. Specifically, he alleged in his motions that the Indiana Supreme Court's recent opinion in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005), renders the search of his home unconstitutional and the evidence seized inadmissible. Thus, Turner sought to withdraw his guilty plea in order to challenge the constitutionality of the police action in his case.

The trial court conducted a hearing on Turner's motion to withdraw his guilty plea and denied that motion. At the sentencing hearing, the trial court then accepted Turner's guilty plea and identified one aggravating factor, the nature and circumstances of the crime, and two mitigating factors, namely, that Turner had no prior criminal history and has a strong and supportive family. The trial court sentenced Turner to twenty-five years, with five years suspended. This appeal ensued.

## DISCUSSION AND DECISION

Turner contends that the trial court should have granted his motion to withdraw his guilty plea. In particular, he maintains that when he filed his motion the trial court had not accepted his plea, nor had it entered judgment of conviction. Likewise, he alleges that withdrawal of his plea is necessary to correct a manifest

injustice because a new constitutional rule provides a credible defense against the admissibility of evidence in the State's case against him.

Indiana Code Section 35–35–1–4(b) states the applicable standard when a defendant pleads guilty pursuant to an agreement with the State and then requests to withdraw the plea:

> After entry of a plea of guilty ..., but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea ... for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea.... The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea ... whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

*Id.*

Our appellate courts have interpreted this statute to require a trial court to grant such a request:

> only if the defendant proves that withdrawal of the plea "is necessary to correct a manifest injustice." The court must deny a motion to withdraw a guilty plea if the withdrawal would result in substantial prejudice to the State. Except under these polar circumstances, disposition of the petition is at the discretion of the trial court.

*Weatherford v. State*, 697 N.E.2d 32, 34 (Ind.1998) (citation omitted).

"Manifest injustice" and "substantial prejudice" are necessarily imprecise standards, and an appellant seeking to overturn a trial court's decision has faced a high hurdle under the current statute and its predecessors. *Id.* The trial court's ruling on a motion to withdraw a guilty

plea arrives in our appellate courts with a presumption in favor of the ruling. *Id.* One who appeals an adverse decision on a motion to withdraw must therefore prove the trial court abused its discretion by a preponderance of the evidence. *Id.* We will not disturb the court's ruling where it was based on conflicting evidence. *Id.*

██ First, Turner claims that the trial court should have granted his motion to withdraw his guilty plea because at the time he filed his motion the court had not yet accepted the plea. Although Turner correctly notes that he filed his motion to withdraw before the trial court formally "accepted" his plea, that is not the dispositive factor in determining whether the court should have granted his motion. Rather, again, the Indiana Code provides:

> After *entry* of a plea of guilty ... but before imposition of sentence, the court *may* allow the defendant by motion to withdraw his plea of guilty ... for any fair and just reason unless the [S]tate has been substantially prejudiced by reliance upon the defendant's plea.

Ind.Code § 35–35–1–4(b) (emphases added). The "entry" of a guilty plea and the court's subsequent "acceptance" of that plea are two distinct stages of the plea process. Indeed, our supreme court has recognized for over two decades that "court permission is required to withdraw a guilty plea, even when the plea has not been accepted and the withdrawal request is based upon a protestation of innocence." *Carter v. State,* 739 N.E.2d 126, 131 (Ind. 2000) (citing *Owens v. State,* 426 N.E.2d 372, 375 (Ind.1981)). Thus, Turner's claim that the trial court abused its discretion when it denied his motion to withdraw his guilty plea because the court had not yet accepted his plea is misplaced.

Next, Turner maintains that granting his motion to withdraw his guilty plea is necessary to correct a manifest injustice because after he had entered his plea, our supreme court decided *Litchfield,* which Turner claims established a credible defense that was previously unavailable. Specifically, Turner contends that the holding in *Litchfield* renders the search of his home unconstitutional. Turner's case was not yet final when our supreme court decided *Litchfield. See Smylie v. State,* 823 N.E.2d 679, 687 (Ind.2005), *cert denied.* And the new rule enunciated in *Litchfield* constitutes a "clear break" with the past. *Id.* Thus, we will proceed to the substance of Turner's motion to withdraw his guilty plea.

In *Moran v. State,* 644 N.E.2d 536 (Ind. 1994), our supreme court held that police conduct was not unreasonable under Article I, Section 11 where the police did not trespass or disturb the neighborhood when they seized the contents of the defendants' garbage cans, which had been placed at the curtilage for removal. The court concluded that "one who places trash bags for collection intends for them to be taken up, and is pleased when that occurs," and that the officers conducted themselves in a similar manner to trash collectors and did not cause a disturbance. *Id.* at 541.

Recently, however, in *Litchfield* our supreme court enunciated a new trash search rule. As noted above, under *Moran,* law enforcement officers were free to search curbside trash willy-nilly, and the fruits of those searches could be utilized to provide probable cause for a warrant. But under *Litchfield,* law enforcement officers may only search curbside trash if they have an articulable, individualized suspicion that the trash may contain evidence of criminal conduct.

██ Specifically, the court in *Litchfield* held that "a search of trash recovered from the place where it is left for collection is permissible under the Indiana Constitution, but only if the investigating officials have an articulable basis justifying reason-

able suspicion that the subjects of the search have engaged in violations of law that might reasonably lead to evidence in the trash." *Id.* at 357. The court explained, "We believe a requirement of articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile, imposes the appropriate balance between the privacy interests of citizens and the needs of law enforcement." *Id.* at 364. Thus, *Litchfield* represents a significant development in Indiana constitutional law because it prohibits the State from randomly searching and seizing trash containers and holds that there must be an evidentiary foundation for such activity. Under *Litchfield*, Indiana residents enjoy greater protection from trash searches under Article I, Section 11 than they do under the Fourth Amendment to the United States Constitution.

Turner claims that the search warrant that the officers had executed "was illegal and based on information obtained in violation of [Turner's Indiana constitutional] rights." Appellant's App. at 35. In particular, he claims that "[t]he search warrant was based on items allegedly found in trash taken from [Turner's] residence" in violation of *Litchfield. Id.* at 34. And according to Turner, the search of his trash violated his constitutional rights because the officers who executed the "trash pull" did not have reasonable articulable suspicion to believe that evidence of illegal activity would be found by rummaging through his trash.

The trial court did not hold a hearing on his motion to suppress. Instead, the court held a hearing on Turner's motion to withdraw his guilty plea and then denied that motion. The trial court's reasons for denying the motion were, in part, as follows:

> First, in examining the affidavit attached to the motion ... [i]t doesn't appear that there was an anonymous tip. It doesn't appear obviously that there was an anonymous tip, which would be the main reason to grant a *Litchfield* suppression. Rather, it says that affiant had been contacted by [an officer] who advised that he had received some complaints that there might be drug dealing at [Turner's] residence. It doesn't indicate that those are anonymous complaints and the report that the affiant had received came from an identifiable source. So[,] I think that the main premise of *Litchfield* that there has to be some reasonable suspicion to trigger such a search hasn't been triggered by the evidence which the parties are considering [sic].
>
> Second, I don't think that *Litchfield* was anticipated ....
>
> Third, the officer who did perform the search, as far as we know, is absent. And it would be a hardship to the State to bring him back.
>
> Fourth, there has been a tremendous delay in the resolution of this case, and if this had proceeded on an ordinary track we wouldn't be having this argument today because the case would have been resolved months and months and months ago. And it's not the policy of this Court to give anybody an advantage by seeking delay ....
>
> And finally, the suppression of evidence based upon search and seizure violations is not at the highest level of protection of rights among people's constitutional rights, especially ... where[,] as here[,] it is simply an Indiana Constitutional right and not even a federal constitutional right ....

Appellant's App. at 72–74.

With respect to the trial court's first stated reason for denying Turner's motion to withdraw his guilty plea, the court commingled two distinct issues. Specifically, the trial court stated that the affidavit did

not indicate that the complaints were anonymous and that "the report that the affiant had received came from an identifiable source." *Id.* at 73. We will address each issue in turn.

While we cannot discern whether the complaints were anonymous, the source or sources for the complaints were not identified in the probable cause affidavit. That is, there is no evidence in the record that reveals any information about the identity of the sources. The affidavit in support of the search warrant simply stated that the Town Marshall had advised the affiant that he had received "some complaints that there might be drug dealing at [Turner's] residence." *Id.* at 77.

Still, the trial court states that the complaints the affiant had received came from an identifiable source. But the only person the affiant identified was the Town Marshall. And while the Town Marshall relayed the nature of the complaints to the affiant, he was not the source but was merely a conduit for those complaints.

The State concedes that the complaints were "second-hand" but asserts that the affiant was entitled to rely on second-hand reports. We note, however, that the affiant learned of the reports third-hand, not second-hand. Specifically, someone told the Town Marshall that "there might be drug dealing," and the Town Marshall told the affiant. *Id.* The State also claims that the Town Marshall had received "multiple reports," and contends that the presence of multiple reports, even if anonymous, can form the basis for reasonable suspicion if they corroborate one another. Brief of Appellee at 5. But the State does not support its bald assertion, and the record is devoid of any evidence, that the reports corroborate one another.

Even if the reports corroborated one another, the reports cited in the affidavit were nothing more than rumor. And, in any event, regardless of the source, the statement that "there might be drug dealing" at the residence is hardly sufficient to establish the requisite articulable individualized grounds to support a search of Turner's trash. *See Litchfield,* 824 N.E.2d at 364.[2]

■ In *Litchfield,* our supreme court explained that the "legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* at 359. "[T]he totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360. In *Moran,* the majority had noted "that Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside." *Moran,* 644 N.E.2d at 541. Then, in *Litchfield,* the court concluded that "it is not reasonable for law enforcement to search indiscriminately through

---

2. The dissent notes that "that the purpose of the exclusionary rule is to deter police misconduct," and here, "[p]rior to the rule announced in *Litchfield,* the conduct of the officers ... was not unreasonable or improper[.]" But police misconduct is not an issue in this case. Rather, we reverse because Turner has a right to invoke a new constitutional rule promulgated by our supreme court. Aside from declaring that "*Litchfield* should have prospective application," the dissent disregards our supreme court's holding in *Smylie,* 823 N.E.2d at 687, that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." (citations omitted). And as we have noted, there is no question that Turner's case was "not yet final" when our supreme court decided *Litchfield. Id.*

people's trash." *Litchfield,* 824 N.E.2d at 363. Rather, to conduct a "trash pull," the officers must possess an "articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile," that the individual is engaged in illegal activity. *Id.* at 364.

■ Reasonable suspicion is a " 'somewhat abstract' " concept, not readily reduced to " 'a neat set of legal rules.' " *Moultry v. State,* 808 N.E.2d 168, 171 (Ind. Ct.App.2004) (quoting *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). "When making a reasonable suspicion determination, reviewing courts examine the 'totality of the circumstances' of the case to see whether the detaining officer had a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* (quoting *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744). The reasonable suspicion requirement is met where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Id.*

■ On this record, the third-party hearsay cited in the affidavit would not, as a matter of law, support a finding of reasonable articulable suspicion that Turner was or had engaged in illegal activity. Again, the affiant stated that he had been advised that the Town Marshall had received some complaints that there might be drug dealing at Turner's residence. It is well settled that reasonable suspicion must be comprised of more than an officer's general " 'hunches' " or unparticularized suspicions. *Webb,* 714 N.E.2d 787, 788 (Ind.Ct.App.1999) (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A suggestion by unidentified sources that there "might" be drug dealing at a residence amounts to nothing more than a general hunch and clearly does not rise to the level of articulable suspicion required to search trash discarded for removal. *See* Appellant's App. at 77.

■ Once more, the trial court's ruling on a motion to withdraw a guilty plea arrives in this court with a presumption in favor of the ruling, and an appellant seeking to overturn the court's ruling faces a high hurdle. *See Weatherford,* 697 N.E.2d at 34. Here, Turner has met and overcome that hurdle. Indeed, he has made a convincing showing that he has a credible defense. Thus, the trial court should have granted Turner's motion to withdraw his guilty plea because he has demonstrated that withdrawal of his plea is necessary to correct a manifest injustice, namely, that he should have a fair opportunity to vindicate his Article I, Section 11 constitutional right against unreasonable search and seizure as enunciated in *Litchfield.*

Further, we note that the State does not claim on appeal that it would be substantially prejudiced if the trial court granted Turner's motion to withdraw his guilty plea. However, even considering the information that we can glean from the record, including the reasons the trial court gave when it denied Turner's motion, withdrawal of Turner's guilty plea will not substantially prejudice the State.

The trial court stated "the officer who did perform the search . . . is absent. And it would be a hardship to the State to bring him back." Appellant's App. at 73. While the record reveals that one of the State's witnesses may have moved out of the state, it appears that the officer had left even before Turner entered his guilty plea. At the time the officer moved, the State had not secured Turner's guilty plea and would have had to produce that witness if the case had proceeded to trial. Thus, the State cannot show that it was prejudiced by reliance on Turner's guilty plea. There was no "hardship" on the

State that would amount to prejudice under the statute. *See* Ind.Code § 35–35–1–4(b).

The trial court also stated:

> [T]here has been a tremendous delay in the resolution of this case[,] and if this case had proceeded on an ordinary track, we wouldn't be having this argument today because the case would have been resolved months and months and months ago. And it's not the policy of this Court to give anybody an advantage by seeking delay.

Appellant's App. at 73–74. While the trial court acknowledged that it did not know enough about the reasons for the delay to attribute it to one party, it reiterated that it did not want "to give either party the advantage of the delay." *Id.* at 74.

But the trial court also acknowledged that the supreme court's decision in *Litchfield* was not anticipated. And it has not been shown that Turner engaged in delay tactics in order to benefit from case law that might emerge and provide him with a defense. Accordingly, Turner is not chargeable with the delay in this case. The withdrawal of Turner's guilty plea is necessary to correct a manifest injustice, namely, the opportunity to assert a previously unavailable constitutional right, and the State will not be substantially prejudiced by withdrawal of his plea. The trial court should have granted Turner's motion.

 Finally, we respectfully disagree with the trial court's suggestion that the constitutional guarantee against unreasonable search and seizure comprises an inferior class of constitutional rights or that the rights enumerated under Article I, Section 11 of the Indiana Constitution are inferior to federal constitutional rights under the Fourth Amendment. Both constitutional provisions serve the same purpose: "[t]he fundamental purpose of the Fourth Amendment [to] the United States Constitution [and Article I, Section 11 of the Indiana Constitution] is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Wilson v. State*, 754 N.E.2d 950, 954 (Ind.Ct.App.2001) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). The federal constitution "operates to provide at least a minimal protection to citizens no matter in what state the issues may arise." *Hines v. Caston Sch. Corp.*, 651 N.E.2d 330, 338 (Ind.Ct.App.1995) (Barteau, J., dissenting) (quoting *Moran v. State*, 625 N.E.2d 1231, 1236 (Ind.Ct.App.1993), *vacated by* 644 N.E.2d 536 (Ind.1994)), *trans. denied.* And Article I, Section 11 sits on its own bottom. It is a well-settled pillar of federalism that a state may provide its citizens greater protection than that required by the federal constitution. *See id.* at n. 3.

Therefore, pursuant to our supreme court's recent opinion in *Litchfield*, we reverse and remand for a full hearing on the merits of Turner's motion to suppress. On remand, the question presented is whether the affidavit in support of the search warrant demonstrated that before the officers searched Turner's trash, they had an "articulable individualized suspicion" that Turner was or had engaged in illegal activity. *See Litchfield*, 824 N.E.2d at 364. We caution that the court may consider only the evidence presented when the warrant was issued and may not rely on post hac justifications for the affidavit. *See Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997).

Reversed and remanded.

BAILEY, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's conclusion that Turner should have been permitted to withdraw his guilty plea in these circumstances. In essence, I cannot agree that allowing Turner to withdraw the plea was "necessary to correct a manifest injustice." *See Weatherford v. State*, 697 N.E.2d 32, 34 (Ind.1998).

As the majority observes, our Supreme Court determined in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005), that in cases involving a "trash pull," a "requirement of articulable individualized suspicion, essentially the same as is required for a '*Terry*[3] stop' of an automobile, imposes the appropriate balance between the privacy interests of citizens and the needs of law enforcement." *Id.* at 364; *see* op. at 942. This court has previously held that a reasonable suspicion must be comprised of more than a police officer's general "hunch" or "unparticularized suspicion." *Webb v. State*, 714 N.E.2d 787, 788 (Ind.Ct. App.1999). And the facts supporting a reasonable suspicion that criminal activity is afoot must rise to some minimum level of objective justification. *Shirley v. State*, 803 N.E.2d 251, 255–56 (Ind.Ct.App.2004).

Before announcing this new standard, our Supreme Court in *Litchfield* pointed out that "[a] majority of states follow federal doctrine and hold that their state constitutions permit a warrantless search of trash that has been left out for collection based on a lack of a reasonable expectation of privacy." *Litchfield*, 824 N.E.2d at 359. This particular rationale is premised on the notion that by depositing the trash in a place accessible to the public for collection, "the depositor has relinquished any reasonable expectation of privacy." *Id.* (quoting *State v. Sampson*, 362 Md. 438, 765 A.2d 629, 634 (2001)).

When considering the circumstances here, I note that the purpose of the exclusionary rule is to deter police misconduct. *See Osborne v. State*, 805 N.E.2d 435, 439 (Ind.Ct.App.2004), *trans. denied.* Prior to the rule announced in *Litchfield*, the conduct of the officers here was not unreasonable or improper, inasmuch as they were free to "grab" Turner's curbside trash without meeting any standard of individualized suspicion. *See Moran v. State*, 644 N.E.2d 536, 541 (Ind.1994) (holding that one who places trash bags for collection "intends for them to be taken up"). That said, it follows that Turner's decision to plead guilty was based—at least in part— on police activity that was proper at the time his trash was seized.

In my view, it is unfair to apply the "new" standard that was announced in *Litchfield* to the circumstances here and permit Turner to withdraw his guilty plea on the basis that the police conduct in seizing the trash may have been improper. While the police officers were not required to do so, they may very well have been able to point to additional factors that would have justified the trash pull under the newly announced *Litchfield* standard. We simply cannot glean from the record which party would have prevailed under *Litchfield*, as the State was not required to present any evidence at the time pursuant to this newly-announced standard. When considering the posture of this case and the circumstances presented here, I believe that the rule announced in *Litchfield* should have prospective application only. Thus, I cannot agree with the majority's decision to permit Turner to withdraw his plea, as there is no "manifest injustice" to correct.

---

3. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).