Heath ESHELMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 57A05–0604–CR–185.

Court of Appeals of Indiana.

Jan. 10, 2007.

John Pinnow, Special Assistant to the State Public Defender, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Heath Eshelman appeals his convictions for Possession of Methamphetamine,[1] a class C felony, Possession of Precursors,[2] a class C felony, Illegal Possession of Anhydrous Ammonia or Ammonia Solution,[3] a class C felony, and Maintaining a Common Nuisance,[4] a class D felony. Eshelman contends that his convictions must be reversed because the trial court abused its discretion in admitting evidence that was obtained from a search of his trash and other evidence that was seized pursuant to search warrants that were issued following the trash search. Concluding that the evidence was properly admitted, we affirm the judgment of the trial court.

### FACTS

In December 2004, Chief Deputy Doug Harp of the Noble County Sheriff's Department learned from an informant that Eshelman might have been making methamphetamine either at his home or his automotive shop business. Deputy Harp passed this information on to Indiana State Trooper Corey Culler, who then informed Trooper Robert Smith of Eshelman's possible activities. While Trooper Smith knew that Deputy Harp and Trooper Culler were reliable, he did not know the identity of Deputy Harp's informant.

On January 5, 2005, Trooper Smith learned from the Noble County Disposal Company (Disposal Company) that collected Eshelman's garbage that it had not recently picked up Eshelman's trash because he was in arrears on his account. The Disposal Company personnel told Trooper Smith that they would not collect Eshelman's trash until the account was paid in full.

The following day, Trooper Smith spoke with Noble County Jail inmate Terry

---

1. Ind.Code § 35–48–4–6(b)(1)(B).

2. I.C. § 35–48–4–14.5(f).

3. I.C. § 35–48–14.5(c)(1).

4. I.C. § 35–48–4–13(b)(2).

Wicker who stated that Eshelman was the "man of the hour" and a "big time cook" in Noble County with regard to methamphetamine production. Tr. p. 44. Thereafter, on January 10, 2005, Trooper Smith learned that Eshelman had paid his garbage bill and that his trash would be collected from the dumpster at his automotive business. Thus, Trooper Smith arranged with the Disposal Company to have the garbage collected in the usual manner from Eshelman's business and deposited at the garbage company's place of business.

On January 10, 2005, the Disposal Company picked up the trash in an empty truck and dumped it into a vacant building so that the Indiana State Police could search it. During the search, the officers found a number of items including salt, burnt aluminum foils, empty butane cans, rubbing alcohol bottles, used paper towels and coffee filters that had a strong chemical odor, baggies with the corners removed, perforated cans of starter fluid, several empty packages of pseudoephedrine pills, latex rubber gloves, an HCL generator, empty acetone cans, and stripped lithium batteries. All of the items that were seized from the trash could be considered as evidence of methamphetamine manufacture and use.

On January 11, 2005, Trooper Smith applied for warrants to search Eshelman's business and residence based on the information from Deputy Harp, the jail inmate, and the trash search. In the probable cause affidavit, Trooper Smith related that he had received the information regarding Eshelman's methamphetamine manufacturing from Deputy Harp through Trooper Culler, both of whom he knew to be credible because he had worked with them on several cases in the past. At that time, Trooper Smith did not identify Deputy Harp's source of information. Trooper

Smith also related in his affidavit that his second source of information regarding Eshelman was his face-to-face discussion on January 6, 2005, with Wicker at the Noble County Jail. Trooper Smith did not identify Wicker by name in the affidavit but instead related that he had spoken directly with him.

The trial court issued the search warrants for Eshelman's residence and business, and the officers executed those warrants on January 11, 2005. When the police arrived at Eshelman's business, Eshelman was unloading flats of soda pop from the back seat of a tan Lincoln automobile that was registered in his name. The officers discovered some pink power residue in the trunk that contained 2.16 grams of ephedrine. They also discovered a number of handguns and rifles in the office and parts area of Eshelman's business. The police found two recipes for the manufacture of methamphetamine in a file drawer. Another drawer contained a box of latex gloves, plastic baggies with white pills containing ephedrine, smoking devices, a set of digital scales, .84 grams of methamphetamine in two Ziploc baggies, and .86 grams of methamphetamine in a metal cylinder.

The police then searched a storage barn on Eshelman's business property and seized a number of other items associated with the manufacture of methamphetamine. A container of ether was found in an unregistered van on Eshelman's property. During the search of Eshelman's residence, .28 grams of marijuana and a glass smoking device were seized.

As a result of the search, Eshelman was charged with the previously-listed offenses. On April 25, 2005, Eshelman filed a motion to suppress, alleging that the items seized during the execution of the search warrants should be suppressed because:

3. The issuance of the two search warrants were the result of an improper ex parte application for the warrant, in that the warrants did not particularly describe the premises to be searched, the warrants did not permit the search of a person, the testimony and/or affidavit in support of the search warrant did not state facts sufficient to show probable cause in each warrant.

4. That the warrants were based on uncorroborated hearsay information, and the sworn application in support of both search warrants fails to state sufficient evidentiary facts to corroborate a hearsay informant's credibility or reliability as required by I.C. Sec. 35–33–5–2.

Appellant's App. p. 15. Following a hearing, the trial court denied Eshelman's motion to suppress on June 20, 2005. In relevant part, the trial court's order provided that:

3. The motion hinges upon whether the search of the trash was reasonable.

4. Information from an anonymous tip given from Chief Deputy Harp to Trooper Culler, to Trooper Smith did not give police reasonable suspicion of criminal behavior sufficient to justify a warrantless search of Defendant's trash. *Crook v. State*, 827 N.E.2d 643 (Ind.Ct.App.2005).

5. Information received on January 6, 2005, by Trooper Smith from an inmate of the Noble County Jail that the Defendant was the "man of the hour" in Noble County when it came to methamphetamine and that Defendant was a big time cook, corroborated the anonymous tip set out above and the Court finds that officer possessed reasonable suspicion to obtain and search Defendant's trash. *Litchfield v. State*, [8]24 N.E.2d 356 (Ind.2005).

Appellant's App. p. 35. At a jury trial that commenced on November 15, 2005, Eshelman made a continuing objection to the admission of the evidence that was seized, which the trial court overruled. In the end, Eshelman was found guilty as charged. He now appeals, claiming that the admission of the evidence that was seized during the searches violated Article One, Section Eleven of the Indiana Constitution.[5]

## DISCUSSION AND DECISION

We initially observe that this court reviews a trial court's determination as to the admissibility of evidence for an abuse of discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001). Here, Eshelman does not deny that if the trash search at issue was valid, the resulting warrants were supported by probable cause. Thus, inasmuch as Eshelman is challenging the validity of the trash search, we note that in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005), our Supreme Court altered the rules of trash collection by the police. In essence, the *Litchfield* court determined that it was unreasonable for police "to search indiscriminately through people's trash." *Id.* at 363. More specifically, *Litchfield*, which was decided on March 24, 2005—approximately two months after Eshelman's trash was seized—announced a two-part test for

---

5. Article One, Section Eleven of the Indiana Constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

determining whether a trash search is reasonable. First, it was determined that the search must be based upon an "articulable individualized suspicion that illegal activity is or has been taking place, essentially the same as is required for a *'Terry* stop' of an automobile" before an officer could seize trash set out for collection. *Id.* Additionally, the trash must be retrieved in substantially the same manner as the trash collector would take it. *Id.* at 363–64.

In construing these rules, it has been determined that reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or "hunch" of criminal activity. *Illinois v. Wardlow,* 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). When reviewing a determination of a reasonable suspicion to support a warrantless search, the court examines the totality of the circumstances of the case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Turner v. State,* 843 N.E.2d 937, 944 (Ind.Ct.App.

2006). The reasonable suspicion requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Id.* The reasonableness of a search or seizure turns "on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcements needs." *Litchfield,* 824 N.E.2d at 361.

In this case, while the police arguably were not required to comply with the *Litchfield* requirements [6], we nonetheless agree with the trial court that the search of Eshelman's trash was justified.

Trooper Smith related in his probable cause affidavit that he received information from two sources regarding Eshelman's involvement with methamphetamine manufacturing. The first source was the information obtained from Deputy Harp that Eshelman was possibly manufacturing methamphetamine as recently as December of 2004. Ex. 1. Thereafter—and before searching Eshelman's trash—Trooper

---

**6.** Various panels of this court have found that an officer's good faith reliance on a search warrant based on evidence from a pre-*Litchfield* trash search does not mandate suppression of the post-search warrant evidence. For instance in *Edwards v. State,* 832 N.E.2d 1072, 1077 (Ind.Ct.App.2005), this court observed that

> Under the state of the law as it existed at the time of the search of the trash, this search was not unreasonable and the marijuana was properly discovered evidence. Consequently, according to I.C. § 35–37–4–5, the evidence could not have been properly excluded and could provide support for the finding of probable cause to issue the warrant.

*See also Richardson v. State,* 848 N.E.2d 1097, 1105 (Ind.Ct.App.2006) (holding that the good

faith exception applies to a pre-*Litchfield* trash search conducted pursuant to a warrant which was valid according to the law then in effect), *trans. denied.* Moreover, prior to *Litchfield,* the only limitations governing the trash pull procedure concerned the manner in which an individual's trash was seized. *See Moran v. State,* 644 N.E.2d 536, 541 (Ind. 1994) (holding that trash seizures were permitted when police conducted themselves in the same manner as would be appropriate for those whose duty it was to pick up the trash); *see also Mast v. State,* 809 N.E.2d 415, 420–21 (Ind.Ct.App.2004) (finding that the seizure of trash was reasonable where police rode in the trash pickup vehicle and searched the trash after it was taken by its usual collectors), *trans. denied.*

Smith had a face-to-face conversation with the inmate at the Noble County jail who told him about Eshelman's prominence as a methamphetamine manufacturer in the county. *Id.* The affidavit suggested no reason to doubt the inmate's credibility, and there is no indication that the inmate received any benefit from his conversation with Trooper Smith. The inmate's statements corroborated what Trooper Smith had learned about Eshelman from Deputy Harp—specifically that Eshelman was manufacturing methamphetamine. Hence, Trooper Smith received information that Eshelman was manufacturing methamphetamine from a known source whose credibility he could gauge first-hand and a source that could have been held criminally liable for giving false information to Trooper Smith. The inmate's statements corroborated the information that Trooper Smith had received from Deputy Harp, and Trooper Smith related no circumstances that would cast doubt upon the inmate's report. Even so, Eshelman maintains that because it was not apparent from Trooper Smith's affidavit that the source of Deputy Harp's information and the inmate were different individuals, it was possible that there was no true corroboration of the statements. However, there was no evidence in Trooper Smith's affidavit or at the suppression hearing to support Eshelman's claim. Moreover, the averment by Trooper Smith in his affidavit that the source was a jail inmate and that he had spoken to him personally gave rise to the reasonable inference that Trooper Smith believed the inmate to be credible and that the inmate's identity was known to Trooper Smith. In light of these circumstances, we conclude that the search of Eshelman's trash was reasonable under either pre or post-*Litchfield* principles. Similarly, when considering the evidence that was seized from Eshelman's trash, along with the information that Trooper

Smith received from Deputy Harp and the jail inmate, we conclude that the issuance of the search warrants was proper. As a result, the evidence seized in the searches was properly admitted at Eshelman's trial.

The judgment of the trial court is affirmed.

KIRSCH, C.J. and SHARPNACK, J., concur.