**Jerald GILLESPIE, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 49A02–0002–PC–113.

Court of Appeals of Indiana.

Oct. 17, 2000.

Transfer Denied Dec. 21, 2000.

See also, *Gillespie v. City of Indianapolis,* 185 F.3d 693.

John F. Kautzman, Ruckelshaus, Roland, Kautzman & Hasbrook, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant, Jerald Gillespie (Gillespie), appeals the trial court's denial of his Verified Petition for Post–Conviction Relief and Verified Motion to Withdraw Guilty Plea. Gillespie also appeals the trial court's denial of relief pursuant to Ind. Trial Rule 60(B).

We affirm.

### ISSUES

Gillespie raises three issues on appeal, which we restate as follows:

1. Whether the trial court erred in denying Gillespie's Verified Petition for Post–Conviction Relief.

2. Whether the trial court erred in denying Gillespie's Verified Motion to Withdraw Guilty Plea.

3. Whether the trial court erred in denying Gillespie relief pursuant to Ind. T.R. 60(B).

### FACTS AND PROCEDURAL HISTORY

On August 17, 1995, Gillespie, an Indianapolis police officer, hit his ex-wife with a closed fist, threw her to the floor, bit her, and kept her from leaving the house. Subsequently, Gillespie was charged with criminal confinement as a Class D felony, Ind.Code § IC 35–42–3–3, and battery as a Class A misdemeanor, Ind.Code § 35–42–2–1. Gillespie entered into a plea agreement with the State. This agreement provided that Gillespie would plead guilty to the misdemeanor charge of battery, and, in exchange, the State would dismiss the felony charge of criminal confinement. On November 28, 1995, the trial court entered a judgment of conviction pursuant to the plea agreement. At this time, Gillespie was advised of and waived all of his applicable constitutional rights.

In 1996, Congress approved, and the President signed into law, a number of amendments to the Gun Control Act of 1968. Among them was an amendment sponsored by New Jersey Senator Frank Lautenberg, which provides that it shall be unlawful for any person convicted of a "misdemeanor crime of domestic violence" to possess a firearm. 18 U.S.C. § 922(g)(9). Since 18 U.S.C. § 922 does not exempt law enforcement officers, the Indianapolis Police Department concluded that Gillespie was ineligible to continue to serve as a police officer and he was therefore terminated.

Thereafter, Gillespie filed an action in federal court against the City of Indianapolis seeking to have 18 U.S.C. § 922(g)(9) declared unconstitutional and his employment with the Indianapolis Police Department preserved. In *Gillespie v. City of Indianapolis*, 185 F.3d 693, 709 (7th Cir. 1999), the Seventh Circuit Court of Appeals held that:

> Congress is free to "take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." [citations omitted]. For a legislature concerned about the harm that may befall victims of domestic violence from firearms, persons already convicted of domestic violence are a logical starting, if not ending point.... [B]y definition, those convicted of domestic

violence offenses have already harmed their domestic partners in some fashion. It certainly would not be irrational for Congress to conclude that these individuals pose the most acute danger of turning a gun on a family member.

\* \* \*

We likewise reject the notion that the firearms ban may be irrational to the extent it reaches individuals like Gillespie, who carry firearms in the public interest. That someone previously convicted of engaging in domestic violence may possess a firearm for public rather than private purposes does not negate the possibility that he might use that gun against someone in his household. Congress could, therefore, reasonably conclude that the reasons for an individual carrying a gun are irrelevant and that it is the individual's criminal history which should determine his right to do so.

Thus, the court held that the Act applies to police officers. Therefore, Gillespie's termination by the Indianapolis Police Department was upheld.

Upon exhaustion of his federal cause, Gillespie filed his Verified Petition for Post–Conviction Relief on December 21, 1999. The Petition maintained that the judgment against Gillespie was erroneous because he was denied the opportunity to offer a full, knowing and voluntary guilty plea, and that he was unable to appreciate the legal consequences of his plea. The Petition further stated that because the federal legislation was enacted after his guilty plea, Gillespie was unable to be advised of the ramifications of a then non-existent law.

On January 10, 2000, Gillespie filed his Verified Motion to Withdraw Guilty Plea. The Motion was based on the same allegations set forth in the Verified Petition for Post–Conviction Relief. It was also filed pursuant to Ind.Code 35–35–1–4(c) which allows for withdrawal of a guilty plea to correct a manifest injustice.

On January 12, 2000, the trial court denied these motions. The trial court held that there was no legal basis upon which it could justify overturning Gillespie's conviction. Gillespie responded by filing a Motion to Reconsider and Request for Specific Findings and Conclusions on January 21, 2000. On January 27, 2000, the trial court held that there was no legal reason to allow Gillespie to withdraw his guilty plea. This appeal followed.

## DISCUSSION AND DECISION

### I. *Post–Conviction Relief*

Gillespie asserts that the trial court erred in denying his Verified Petition for Post–Conviction Relief. Generally, the petitioner in a post-conviction relief proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. *Neville v. State*, 663 N.E.2d 169, 171 (Ind.Ct.App.1996). On appeal from a denial of post-conviction relief, we neither reweigh the evidence nor judge witness credibility. *Id.* at 171–172. To succeed on appeal, the petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the trial court. *Id.* at 172.

### A. *Newly Discovered Evidence*

Gillespie maintains that 18 U.S.C. § 922(g)(9), which makes it unlawful for any person convicted of a "misdemeanor crime of domestic violence" to possess a firearm, is new evidence because it was not available at the time of his conviction. Gillespie relies on *Fox v. State*, 568 N.E.2d 1006 (Ind.1991). In *Fox*, the victim drowned while boating with Fox. *Id.* at 1007. Fox was convicted of murder. Initially, the evidence appeared to support this conviction. *Id.* However, a witness, not known of at the time of the trial, had information that supported Fox's theory of death by accident. *Id.* Based on the newly discovered evidence, Fox's conviction was overturned. *Id.* In pertinent part, the *Fox* court held that:

[N]ewly discovered evidence must be supported by one or more affidavits which must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. In ruling whether a piece of evidence would produce a different result, the judge may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case. On appeal, the denial of a motion predicated on newly discovered evidence is considered a discretionary ruling and is reviewed deferentially.

*Id.* The *Fox* court held that the newly discovered evidence met the factors of the above test. *Id.* at 1008.

However, *Fox* can be distinguished from the present case. In *Fox*, the conviction was overturned based on newly discovered evidence that "cast serious doubt upon the inference that appellant feloniously assaulted" the victim. *Id.* It is true that 18 U.S.C. § 922(g)(9) was enacted after Gillespie entered his plea. Nonetheless, the enactment of the federal legislation does not cast doubt upon the inference that Gillespie battered his ex-wife. Gillespie claims that if this legislation had been in effect at the time that he entered his plea, he would have pled not guilty. The fact that Gillespie would have pled not guilty does not establish that at a trial Gillespie would have been found not guilty. Gillespie does not offer any new evidence establishing his innocence to the misdemeanor charge of battery. Furthermore, the statute is not new evidence that would be offered at a trial of Gillespie on the battery charge. Therefore, Gillespie has failed to demonstrate any newly discovered evidence that would produce a different result at a trial.

### B. *Consequences of a Plea*

■ Next, Gillespie claims that the trial court's inability to advise him of the future federal legislation resulted in an unintelligent and involuntary plea, which unjustly caused his termination from the Indianapolis Police Department. It is axiomatic that a guilty plea must be knowingly, voluntarily, and intelligently entered. *Snowe v. State*, 533 N.E.2d 613, 615 (Ind. Ct.App.1989). In *Snowe*, this court held that the record must indicate that the defendant knew of and understood his rights when he entered his guilty plea. *Id.* at 616. In the present case, the Record clearly indicates that Gillespie knew of and understood his rights. At his sentencing hearing, the following conversation took place:

THE COURT: All right. Now as you know, the Prosecutor has filed a total of two charges against you. The Plea Agreement that you worked out calls for the State to dismiss Count I, Criminal Confinement, and for you to plead guilty to Count II, Battery, a Class A Misdemeanor. The last time you were in Court on October 31st, you and your lawyer and the Prosecutor tendered a Misdemeanor Advisement and Waiver of Rights form to the Court. Is your signature on this document?

MR. GILLESPIE: Yes, it is.

THE COURT: And by signing it, are you telling the Court that you read it and understand it?

MR. GILLESPIE: Yes.

(R. 98–99). The trial court also asked Gillespie if he understood what he was accused of and what the possible penalties were. (R. 99). Gillespie answered affirmatively. (R. 99). Furthermore, the trial court asked Gillespie if he wanted to give up the following: the right to a public and speedy trial by jury, the right to confront

and cross examine witnesses against him, and the right to subpoena witnesses to come to court and testify for him. (R. 99–100). Gillespie answered affirmatively. (R. 100). Finally, the trial court asked Gillespie if anyone had forced, promised, or threatened him with anything to get him to plead guilty. (R. 100). Gillespie said "No." (R. 100).

■ The Record indicates that Gillespie knew of and understood his rights. The fact that Gillespie was not advised of the future federal legislation that caused his termination from the Indianapolis Police Department is not relevant. This court has held that one who pleads guilty need not be advised that the conviction might have adverse but future collateral consequences. *Pike v. State*, 557 N.E.2d 1, 3 (Ind.Ct.App.1990). This is unquestionably premised upon the rationale that the immediate conviction is the sole concern and future or contemplated but uncertain consequences need not be considered or made subject of discussion or advisement. *Id.* Such considerations are irrelevant to the validity. *Id.* Thus, a court is not required to advise a defendant of collateral or potential consequences of his guilty plea. Therefore, the trial court was not required to inform Gillespie of the future federal legislation. We find that Gillespie knew of and understood his rights and that his plea was intelligent and voluntary.

### C. *Harsher Penalty*

Gillespie asserts that he has been subjected to a much harsher penalty than was agreed upon in the plea agreement. Gillespie relies on *Johnson v. State*, 471 N.E.2d 1107 (Ind.1984) to support this assertion. In *Johnson*, Johnson pled guilty to robbery under a plea agreement. *Id.* Subsequently, Johnson filed his petition for post-conviction relief alleging that the trial court failed to inform him that his sentence could be increased due to prior convictions. *Id.* Relief was granted because Johnson did not fully appreciate the

range of possible sentences that could result from his plea. *Id.* at 1109.

*Johnson,* however, can be distinguished from the present case. In *Johnson,* the court failed to inform the defendant that his sentence could be increased due to prior convictions. At his sentencing hearing, the trial court asked Gillespie if he understood that if he had a criminal record, the prosecutor could recommend a tougher sentence. (R. 99). Gillespie told the trial court that he understood. (R. 99). As previously stated, the trial court informed Gillespie of his rights. Gillespie knew of and understood his rights and made an intelligent and voluntary plea. The fact that the trial court did not inform Gillespie of the future federal legislation and the possible consequences therefrom has been discussed above. A court is not required to advise a defendant of collateral or potential consequences of his guilty plea.

Consequently, Gillespie has failed to show that the evidence is without conflict and leads only to a conclusion opposite that of the trial court. Therefore, we find that the trial court did not err in denying Gillespie's Verified Petition for Post–Conviction Relief.

### II. *Verified Motion to Withdraw Guilty Plea*

■ Next, Gillespie maintains that the trial court erred in denying his Verified Motion to Withdraw Guilty Plea. When a defendant enters a guilty plea, his right to collaterally attack the conviction is limited by the provisions of Ind.Code § 35–35–1–4(c) which provides that after sentencing following a guilty plea, a defendant may file a motion to withdraw the plea. *Neville,* 663 N.E.2d at 172. ·The trial court shall vacate the judgment and allow the plea to be withdrawn whenever the defendant proves that withdrawal is necessary to correct a manifest injustice. *Id.* Withdrawal of a guilty plea is appropriate whenever a defendant is denied the effective assistance of counsel, the plea was not entered or ratified by the defendant, the

plea was not knowingly and voluntarily made, the prosecuting attorney failed to abide by the terms of the plea agreement, or the plea and judgment of conviction are void or voidable. *Id.*

In support of his argument, Gillespie again argues that the trial court did not fully advise him of the consequences of his plea. In *Neville,* this court held that when a judgment of conviction upon a guilty plea has become final and the defendant seeks to reopen the proceedings, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. *Id.* We have clearly stated above that Gillespie knew of and understood his rights and entered an intelligent and voluntary plea. Gillespie has simply restated the same argument in his Verified Motion to Withdraw Guilty Plea as he stated in his Verified Petition for Post–Conviction Relief. We found that the trial court did not err in denying Gillespie's Verified Petition for Post–Conviction Relief. Therefore, we find that the trial court did not err in denying Gillespie's Verified Motion to Withdraw Guilty Plea.

### III. *Ind. T.R. 60(B)*

■ Finally, Gillespie argues that the enactment of 18 U.S.C. 922(g)(9) which makes it unlawful for any person convicted of a "misdemeanor crime of domestic violence" to possess a firearm was a total surprise to all parties to the plea agreement. Ind. T.R. 60(B) states, in pertinent part, that: On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect. Ind. T.R. 60(B) further states that a movant filing a motion for mistake, surprise, or excusable neglect must allege a meritorious claim or defense.

Gillespie has not alleged a meritorious claim or defense. As previously stated, the enactment of the federal legislation does not cast doubt upon the inference that Gillespie battered his ex-wife. There has been no surprise as to what Gillespie was charged with and what he pled guilty to. It may be true that the federal legislation was a surprise to Gillespie. However, Gillespie does not offer any evidence establishing his innocence to the misdemeanor charge of battery, nor does he claim to be innocent. Gillespie knew of and understood his rights and made an intelligent and voluntary plea. It is not the duty of the trial court to predict future legislation that may ultimately surprise a defendant. As previously stated, a court is not required to advise a defendant of collateral or potential consequences of his guilty plea.

Therefore, since Gillespie has failed to allege a meritorious claim or defense, the trial court did not err in denying Gillespie relief pursuant to Ind. T.R. 60(B).

### CONCLUSION

Based on the foregoing, we find that the trial court did not err in denying Gillespie's Verified Petition for Post–Conviction Relief. We also conclude that the trial court did not err in denying Gillespie's Verified Motion to Withdraw Guilty Plea. Finally, we find that the trial court did not err in denying Gillespie relief pursuant to Ind. T.R. 60(B).

We affirm.

BAILEY, J., and BARNES, J., concur.