# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**WARREN C. MATHIES**
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Apr 30 2012, 9:30 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON JEFFRIES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 87A01-1102-CR-128 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Keith A. Meier, Judge
Cause No. 87D01-1002-FA-29

**April 30, 2012**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Today we decide whether the trial court should have permitted a defendant to withdraw his guilty plea when his trial counsel failed to discover that the State could not have charged him with being a habitual offender in only one of the two separate causes that were filed against him. Because the defendant could have been tried on one of the habitual offender counts potentially resulting in a longer sentence than he received under the plea agreement and both habitual counts were dismissed pursuant to the plea agreement, we hold that the trial court did not abuse its discretion in denying the defendant's motion to withdraw the guilty plea.

Appellant-defendant Jason Jeffries appeals his conviction for Possession of Methamphetamine with Intent to Deliver or Manufacture,[1] a class A felony, following his plea of guilty to that offense. Specifically, Jeffries argues that the trial court erred in denying his motion to set aside a guilty plea to that offense because his decision to plead guilty was allegedly based on an improper threat by the State to file a habitual offender count against him. Jeffries asserts that the trial court's failure to set aside his guilty plea results in a "manifest injustice." Appellant's Br. p. 1.

Concluding that the trial court properly denied Jeffries's motion to set aside his guilty plea, we affirm.

FACTS

On February 26, 2010, the State charged Jeffries in Cause FA-029, with Count I, possession of methamphetamine with the intent to deliver or manufacture, a class A

---

[1] Ind. Code § 35-48-4-1.1(a)(2), (b).

2

felony; Count II, possession of three grams or more of methamphetamine while in possession of a firearm, a class C felony; and Count III, failure to obey signs and markings, a class C infraction. The trial court subsequently granted the State's motion to amend the charging information to add Count IV, the habitual offender charge.

In a different case, the State amended a charging information in Cause FC-113, alleging that Jeffries was a habitual offender for having accumulated two prior convictions: (1) battery by means of a deadly weapon, a class C felony, on April 22, 2003, for which Jeffries was convicted on July 19, 2004, and (2) burglary, a class C felony, on April 17, 2008, for which Jeffries was convicted on September 26, 2008.

On July 26, 2010, the State and Jeffries entered into a plea agreement involving both Causes, which provided that Jeffries was to plead guilty to Count I, possession of methamphetamine with the intent to deliver or manufacture, a class A felony, in Cause FA-029, in exchange for the dismissal of all remaining counts under that cause number and all counts under Cause FC-113.

At a hearing that commenced that same day, Jeffries indicated to the trial court that he had completed an "advisement of rights" form. Tr. p. 2. It was established that the agreement called for a dismissal of all counts under Cause FC-113, which included the habitual offender allegation and one underlying count. The trial court confirmed with the parties that the sentencing agreement provided for a sentence of forty years. Jeffries would also reserve the right to seek a sentence modification and it was determined that all the charges in both Causes alleging Jeffries to be a habitual offender would be dismissed.

3

After reviewing the terms of the sentencing agreement with Jeffries, the trial court addressed Jeffries's mental capacity and confirmed that he was not under the influence of drugs or alcohol. The trial court then informed Jeffries of his rights were he to go to trial, confirmed that Jeffries understood those rights, that he had read his advisement, informed Jeffries of the State's burden of proof if he went to trial, and confirmed that Jeffries had no further questions regarding those rights.

The trial court reviewed the charges with Jeffries and confirmed that he understood the nature of the charge to which he would be pleading guilty if the trial court accepted the agreement. The trial court also advised Jeffries of the potential penalties if he went to trial, as well as the penalties that attached if the trial court accepted the agreement.

Jeffries acknowledged that he understood his sentence to be less than the maximum and more than the advisory term if the trial court accepted the agreement. The trial court also confirmed that Jeffries understood that his criminal history and parole or probation status could impact a sentence were he to go to trial. Jeffries understood that if he were to go to trial, the court could determine the sentence and that he might receive consecutive sentences for multiple offenses. The trial court also told Jeffries that parole or probation or a suspended sentence could be revoked. The trial court then confirmed that Jeffries received no additional promises, inducements, and was not subject to threats or force, before deciding to accept the agreement.

The trial court determined that Jeffries had reviewed the agreement and advisement forms with his defense counsel, and had reviewed the probable cause affidavits with Jeffries. In response, Jeffries stated that the information contained in the information and probable cause affidavit in Cause FA-029 was true and correct. Jeffries confirmed that he understood the nature of the charge to which he would be pleading guilty and informed the trial court that he understood that the guilty plea was an admission of the truth of the charge. The trial court was satisfied that Jeffries understood that he would be admitting to the truth of the facts contained in the probable cause affidavit and charging information by pleading guilty.

Jeffries agreed to the factual basis for the guilty plea, which was that on "February 24, 2010, in Warrick County, . . . Jeffries knowingly and intentionally possessed methamphetamine, in an amount of three grams or greater, specifically over twenty-one grams, and did so with the intent to deliver or finance the delivery of the same." Tr. p. 29-31. Jeffries acknowledged his commission of the offense and that he violated the statute. Jeffries also informed the court that he saw no advantage in going to trial.

Jeffries then pleaded guilty to this offense and the trial court accepted the plea. The trial court informed Jeffries that it would accept the agreement and asked Jeffries, again, if that is what he wanted, and Jeffries responded, "yes." Tr. p. 33. The trial court again asked Jeffries if he wanted to "back out," of the plea, to which Jeffries responded, "no." Id. at 33-34. The trial court then ordered a pre-sentence investigation report and set the matter for sentencing.

5

At the sentencing hearing, Jeffries's counsel informed the trial court that his review of the habitual offender statute indicated that Jeffries would not have been subject to such an enhancement in Cause FA-029. On the other hand, defense counsel conceded that Jeffries was eligible for the habitual offender charge in Cause FC-113. All of the charges in cause FC-113 were to be dismissed under the agreement, and that cause was pending, and only to be dismissed pursuant to the court's acceptance of the sentencing agreement. As noted above, the habitual offender count in Cause FA-029 was also to be dismissed under the agreement.

Defense counsel informed the trial court that he had reviewed Jeffries's options upon learning that the habitual offender enhancement was only available to the State under Cause FC-113, and not cause FA-029, and that he informed Jeffries that those options included the following: (1) proceed to sentencing and accept the sentencing agreement; (2) move to withdraw the guilty plea, which, counsel for Jeffries admitted would entail moving that cause and all others to "square one" for trial; or (3) move for additional time. Tr. p. 38. The trial court informed Jeffries that the matter could be continued, but the time relating to the continuance would be charged to him. The trial court also told Jeffries that he could move to withdraw his guilty plea, but there was no guarantee that the motion would be granted.

Jeffries chose to move to withdraw his guilty plea and requested the trial court to appoint new counsel. The trial court asked the defense to prepare the motion to withdraw the guilty plea in writing, and reminded Jeffries that if the agreement was eventually

6

withdrawn, both causes "could come back." Id. at 46. The trial court also appointed Jeffries new counsel in both causes.

On November 22, 2010, Jeffries moved to withdraw his guilty plea in writing. A hearing on that motion was held on January 27, 2011. Jeffries was represented by his fourth defense counsel, who requested the trial court to set aside the plea. The trial court heard argument from both parties and took judicial notice of the presentence investigation report (PSI).

On February 2, 2011, the trial court denied Jeffries's motion to withdraw his guilty plea. Sentencing was conducted on February 18, 2011. The trial court made the PSI part of the record. Pursuant to the agreement, the trial court sentenced Jeffries to forty years for possession of methamphetamine in excess of three grams, with intent to manufacture or deliver, a class A felony. The State dismissed all charges under Cause FC-113 and the remaining counts under Cause FA-029. Jeffries now appeals.

## DISCUSSION AND DECISION

As noted above, Jeffries maintains that the trial court erred in denying his motion to set aside his guilty plea. Jeffries alleges that his guilty plea was motivated by the State's improper threat of a habitual offender enhancement. In other words, because Jeffries was allegedly not eligible for the habitual offender enhancement under one of the causes, he argues that the State's refusal to negotiate the sentence was improper and results in a manifest injustice.

## I. Standard of Review

7

We first note that Indiana Code section 35-35-1-4(b) governs motions to withdraw guilty pleas. In general, after a defendant pleads guilty but before a sentence is imposed, a defendant may move to withdraw a plea of guilty. Id. The trial court must permit a defendant to withdraw a guilty plea if it is "necessary to correct a manifest injustice." Id. On the other hand, the motion to withdraw the plea should be denied if the plea's withdrawal would substantially prejudice the State. Id. In all other cases, the court may grant the defendant's motion to withdraw a guilty plea "for any fair and just reason." Id.

We also note that a trial court's ruling on a motion to withdraw a guilty plea "arrives in this court with a presumption in favor of the ruling." Brightman v. State, 758 N.E.2d 41, 44 (Ind. 2001). We will reverse the trial court only for an abuse of discretion. Id. In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we examine the statements made by the defendant at the guilty plea hearing to decide whether the plea was offered "freely and knowingly." Id.

## II. Jeffries's Claims

### A. Generally

In this case, Jeffries made it clear that he was entering into the plea because he saw no advantage in going to trial. Although Jeffries indicated at one point that he had not actually sold any methamphetamine, he subsequently acknowledged that he was, in fact, guilty as charged. Tr. p. 32.

Also, Jeffries did not enter into the plea because he might be adjudged to be a habitual offender. Appellant's Br. p. 5-11. Indeed, Jeffries could have been found to be

8

a habitual offender, had he not entered into the plea agreement and had proceeded to trial. Moreover, Jeffries's counsel admitted as much. Tr. p. 38-40. Additionally, Jeffries understood that the habitual offender counts were to be dismissed. Id. at 3, 8. Thus, Jeffries was not subject to an habitual offender adjudication under the terms of the agreement, and he cannot successfully claim that he was misled into pleading guilty on this basis.

To the extent that Jeffries maintains that his guilty plea was unknowing or involuntary, we will proceed to examine the statements that were made at the guilty plea hearing. Jeffries made it clear at the hearing that he entered into the agreement knowing its terms and understood: (1) that those terms included a dismissal of both habitual counts; (2) the possible penalties, had he gone to trial; (3) that those penalties could include consecutive sentences, given the two causes and multiple counts; (4) that the court would determine the sentence in case he went to trial; and (6) that his prior criminal history could be considered by the trial court at sentencing.

Here, Jeffries admitted that he was subject to a habitual offender charge. In our view, the fact that the habitual offender enhancement could attach to Cause FC-113 but not to Cause FA-029, does not give rise to a manifest injustice. Instances of manifest injustice may include any of the following, none of which are present here: a defendant is denied the effective assistance of counsel, the plea was not entered or ratified by the defendant, the plea was not knowingly and voluntarily made, the prosecutor failed to

9

abide by the terms of the plea agreement, or the plea and judgment of conviction are void or voidable.  Gillespie v. State, 736 N.E.2d 770, 775-76 (Ind. Ct. App. 2000).

Here, the State did not fail to abide by the terms of the agreement because the other counts were dismissed, including both habitual offender counts, as well as all counts stemming from Cause FC-113.  In essence, the confusion regarding application of the habitual offender count to one cause and not the other, much like the issue raised by the circumstances in Gillespie, does not rise to the level of a manifest injustice.  Put another way, the State could seek a habitual offender enhancement against Jeffries because he qualified as such under Cause FC-113.  While the State's efforts with regard to Cause FA-029 would have failed, the State nonetheless was legitimately poised to carry out the threat that Jeffries be charged as a habitual offender.  That said, the State did not make any false threats about filing the habitual offender count in this case because he was not coerced into pleading guilty to being a habitual offender under Cause FA-029.

The mistaken application of the habitual count to one cause but not the other might well have been a technical flaw, but it simply does not qualify as an intentional false threat.  Indeed, Jeffries managed to avoid both habitual offender charges, yet the State could have legitimately pursued one of them.  See Munger v. State, 420 N.E.2d 1380, 1387 (Ind. Ct App. 1981) (holding that if a plea is induced by a promise to forego a recidivist proceeding, when  no such proceeding would be warranted, the defendant is per se misinformed as to the benefit of his plea and the bargain is illusory).

10

Had Jeffries gone to trial, he would have been subject to potential convictions on five counts, including three from FA-029, plus conspiracy to traffic with an inmate, in cause FC-113, plus the habitual offender enhancement in cause FC-113. His offense from cause FA-029, to which he pleaded guilty, was a class A felony. Even assuming that an advisory thirty-year sentence would be imposed on that offense, the trial court could have ordered the sentence to be served consecutively with convictions from Cause FC-113. Hence, Jeffries would be facing more than forty years of incarceration. And the dialogue between the trial judge and Jeffries shows that he understood this possibility. Tr. p. 20-25.

In sum, Jeffries did in fact qualify for the application of the habitual offender statute, even if it was misapplied to one cause number when it should have been applied exclusively to the other. Jeffries correctly understood that he had the requisite prior offenses and knew that under any calculation of his potential sentence, he faced more time than the agreement allowed. Thus, Jeffries' contention that the trial court should have granted his motion to set aside his guilty plea on this basis fails.

### B. Ineffective Assistance of Counsel

Finally, to the extent that Jeffries is arguing that the motion to set aside his guilty plea should have been granted because his defense counsel failed to advise him that the habitual offender charge could not have been applied to Cause FA-029, his claim fails.

To prevail on a claim of ineffective assistance of counsel, Jeffries must show both that counsel's performance fell below an objective standard of reasonableness and that

11

the deficient performance prejudiced him. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (citing Strickland v. Washington, 466 U.S. 668 (1984)). There is a strong presumption that counsel rendered adequate assistance. Id. Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance. Id. at 273. Counsel's performance is evaluated as a whole. Lemond v. State, 878 N.E.2d 384, 391 (Ind. Ct. App. 2007).

To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Sims v. State, 771 N.E.2d 734, 741 (Ind. Ct. App. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable. Coleman, 694 N.E.2d at 272.

In this case, the outcome might have been different had Jeffries gone to trial, but he cannot establish a better outcome than the forty-year sentence that he received under the agreement if he had been convicted of the charges. As noted above, the multiple offenses, the nature of the offense to which Jeffries pleaded, and the evidence in his history that reveal his character, all point to a lengthier—rather than shorter—aggregate sentence than the one he received. And even if his initial trial counsel failed to recognize that the habitual offender charge should attach to Cause FC-113 and not cause FA-029, counsel's deficient performance did not prejudice Jeffries because it resulted in a more

12

favorable sentence than the one he would have received, had he gone to trial and been convicted of the charged offenses.

In the guilty plea context, a defendant who claims that he was incorrectly advised by counsel regarding a possible defense must show that but for that advice, he or she would not have pleaded guilty and that the defense likely would have succeeded, and he or she would have received a favorable outcome. Segura v. State, 749 N.E.2d 496, 499 (Ind. 2001). Although Jeffries would have had a defense to one of the habitual offender counts, it had no impact on the issue of whether he would have prevailed at trial on the underlying offenses in cause FA-029, nor does it mean a lesser sentence, and for all the reasons already stated, he was likely facing a lengthier term of incarceration.[2] Jeffries indeed informed the trial court that he saw no advantage in going to trial and admitted that there was no question that he committed the underlying felony to which he pleaded guilty. In short, Jeffries's ineffective assistance of trial counsel claim fails.

CONCLUSION

In light of our discussion above, we conclude that the trial court properly denied Jeffries's motion to withdraw his guilty plea. Jeffries was advised of his rights, the possible penalties that could result from trial, and the terms of the agreement. The State

---

[2] The circumstances here are unlike those in Lafler v. Cooper, No. 10-209, (Mar. 21, 2012), where the Supreme Court of the United States determined that the State had to reoffer a plea agreement to the defendant when it was shown that the ineffective assistance of defense counsel caused the rejection of a plea that led to a more severe sentence following a trial. In Lafler, the defendant demonstrated that but for counsel's deficient performance that led to the plea offer's rejection, there was a reasonable probability that he and the trial court would have accepted the guilty plea. As a result of not accepting the plea and being convicted at trial, the defendant received a minimum sentence 3 ½ times greater than he would have received under the plea.

was not making any kind of idle or unenforceable threat when it charged Jeffries with being a habitual offender, as that charge could have been pursued under Cause FC-113.

Moreover, Jeffries's counsel's failure to recognize the inapplicability of the habitual offender enhancement to one of the two causes did not prejudice Jeffries, and he has not demonstrated that the failure to advise him of such resulted in a worse outcome had he proceeded to trial. To the contrary, a better outcome resulted, given the penalties that would have attached had Jeffries proceeded to trial and been found guilty.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.