**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jun 25 2013, 6:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RYAN BYFIELD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1210-CR-780 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause No. 29D02-1107-FB-11314

**June 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

After a guilty plea, Ryan C. Byfield was convicted of three counts of criminal deviate conduct, all Class B felonies; found to be an habitual offender; and sentenced to a fifty-year aggregate sentence. He now appeals, raising two issues: 1) whether the trial court abused its discretion by denying his motion to withdraw his guilty plea, and 2) whether his sentence is inappropriate in light of the nature of his offenses and character. Concluding there was no abuse of discretion and his sentence is not inappropriate, we affirm but remand for the limited purpose of correcting an error in the abstract of judgment.

## Facts and Procedural History

On the night of June 23, 2011, and into the morning of June 24, Byfield was at a party taking place in the apartment across the hall from that of the victim, H.B. H.B. stopped by the party on her way home and offered to allow the children present at the party to sleep in her apartment where it would be quieter. When she went to her apartment, however, everyone—including the adults—followed. Byfield began touching H.B. despite her repeated refusals of his advances and her asking the other adults to have him leave her apartment. Eventually, some of the adults left but Byfield remained. He grabbed H.B., pulled her into the bedroom, and tried to remove her clothes. She pushed him out of the room, but he was able to pull her back into the room, push her to the floor, and put his penis in her mouth. After H.B. managed to leave the room, Byfield pulled her into the bedroom again, pushed her against the bed and held her down, and put his penis in her anus. He also inserted his finger into her vagina that night. At one point, one of the children witnessed the attack. Later that night, after H.B. called the police, she was

taken to the hospital and examined. A nurse examiner took seventeen photographs of bruises all over her body.

Byfield was eventually charged with three counts of criminal deviate conduct, all Class B felonies, and one count of criminal confinement, a Class D felony, and alleged to be an habitual offender. The State made Byfield a plea offer in which he would plead guilty to one count of criminal deviate conduct, admit to being an habitual offender, and receive a thirty-year aggregate sentence with ten years suspended. Byfield did not accept that offer and the case proceeded toward trial. On April 17, 2012, the morning the trial was scheduled to begin, plea negotiations took place and Byfield entered into an agreement with the State in which he pleaded guilty to all of the charges but sentencing was left to the court. A hearing on the plea agreement took place and the court accepted Byfield's plea.

After the plea hearing but prior to his sentencing hearing, Byfield filed several pro se motions and letters. Byfield's counsel also moved to withdraw his appearance, and after new counsel was appointed, a verified motion to withdraw guilty plea was filed on Byfield's behalf. On September 7, 2012, the trial court conducted a hearing in which it denied Byfield's motion to withdraw guilty plea and sentenced him to concurrent twenty-year terms for the criminal deviate conduct convictions, one of which was enhanced by thirty years for being an habitual offender, for an aggregate fifty-year sentence.[1] Byfield now appeals. Additional facts will be provided as necessary.

---

[1] The criminal confinement conviction was vacated.

## Discussion and Decision

### I. Guilty Plea

#### A. Standard of Review

Indiana Code section 35-35-1-4(b) governs motions to withdraw guilty pleas. Jeffries v. State, 966 N.E.2d 773, 777 (Ind. Ct. App. 2012), trans. denied. In general, after a defendant pleads guilty but before a sentence is imposed, the defendant may move to withdraw a plea of guilty, and the court must grant the motion if withdrawal is necessary to correct a manifest injustice. Id. (quotations omitted). On the other hand, the court must deny the motion if the State would be substantially prejudiced by the withdrawal of the plea. Id. If substantial prejudice or manifest injustice are not implicated, the court may grant the motion for any fair and just reason. Id. There is a presumption in favor of a trial court's ruling on a motion to withdraw a guilty plea, and we will reverse the trial court only for an abuse of discretion. Id. In determining whether an abuse of discretion has occurred, we will examine statements by the defendant at the plea hearing to decide whether the plea was offered freely and knowingly. Id.

#### B. Motion to Withdraw Guilty Plea

Byfield argues that manifest injustice would occur if he is not allowed to withdraw his plea, because his plea was unknowing and involuntary.[2] We disagree.

We first note that Byfield received a thorough hearing during which the judge questioned him extensively about his plea agreement before accepting it. During the hearing, the judge reviewed the charging information, and asked Byfield whether he

---

[2] The State does not argue that it would be substantially prejudiced by withdrawal of the plea.

4

understood that by entering a plea of guilty, he would be admitting the essential elements of each of the counts. The judge informed Byfield of the sentencing range for each of his convictions, and asked him whether he understood that under the terms of the plea, the court would determine whether the prison terms would be served consecutively or concurrently. The judge asked Byfield whether he had placed his initials throughout the plea agreement and whether he had been advised of his trial and constitutional rights. To each of these questions, Byfield answered yes. He asked him if he had any questions about those rights and Byfield responded no. The following colloquy also transpired:

> Q  We've reviewed the recommendation and other than that recommendation has [sic] any promises or anything of value been offered to you to induce you to plead guilty?
> A  No, Your Honor.
> Q  Have you been offered any lenience or special treatment to induce you to plead guilty?
> A  No, Your Honor.
> Q  Have you been threatened or placed in fear to induce you to plead guilty?
> A  No, Your Honor.
> Q  Has anyone else had any promises made to them – leniency offered to them or been threatened to induce you to plead guilty?
> A  No, Your Honor.
> Q  Do you believe that this is your own free and voluntary act?
> A  Yes, Your Honor.
> Q  Are you satisfied with the representation that [your attorney] has given you in this cause?
> A  Yes, Sir.
> Q  Is it still your intention to plead guilty pursuant to the written plea agreement that's before the Court today?
> A  Yes, Your Honor.

Transcript at 28-29. After Byfield withdrew his pleas of not guilty and entered pleas of guilty on each of the counts and admitted to being an habitual offender, the State read a summary of the factual basis for the charges and the judge asked Byfield whether he could rely on that summary as a factual basis for accepting his plea. Byfield answered

5

yes and the court accepted the plea. The judge's questions, along with Byfield's answers,[3] were sufficient to demonstrate that the plea was given freely and knowingly. See, e.g., Johnson v. State, 734 N.E.2d 242, 245 (Ind. 2000).

Byfield points to his assertions of innocence and claims he has "maintained his innocence since at least April 23, 2012 through to [sic] the sentencing hearing on September 7, 2012." Brief of the Appellant at 6. However, as the State notes, the first time Byfield asserted his innocence was six days after the trial court accepted his guilty plea. While a trial court may not accept a guilty plea from a defendant who pleads guilty and maintains his innocence at the same time, Ross v. State, 456 N.E.2d 420, 423 (Ind. 1983), a later protestation of innocence does not require the trial court to grant a motion to withdraw a guilty plea, Johnson, 734 N.E.2d at 245.[4] Moreover, as the trial court found, while Byfield submitted several pro se filings after his guilty plea hearing and prior to his sentencing hearing, they were mostly comprised of expressions of his dissatisfaction with his former attorney rather than assertions of his innocence.

Byfield also claims that he had limited time to discuss his plea with his attorney before accepting the plea agreement and that he had limited opportunity to formulate a trial strategy with his attorney prior to trial. However, the trial court was very careful to note on the record that the plea negotiations, which took place the morning both the court

---

[3] We have summarized only some of those questions and answers here.

[4] Byfield claims that the trial court based its decision, in part, on a faulty premise, because "[t]he trial court mentioned that it believed that because it had entered a judgment of conviction at the guilty plea hearing that impacted Byfield's motion to withdraw his guilty plea." Br. of the Appellant at 8. During the hearing on the motion, the court stated the following: "The Court at the end of the guilty plea hearing did enter a judgment of conviction at that time. And the Court believes that this may distinguish some of the cases that were mentioned in the Defendant's motion and the factual basis that we have in this case." Tr. at 67. This comment appears to be a direct response to the cases cited in Byfield's verified motion to withdraw guilty plea that stand for the proposition that a trial court may not accept a guilty plea from a defendant who pleads guilty and maintains his innocence at the same time, and Byfield's incorrect contention that he "is asserting his innocence and the court has not yet accepted his plea of guilty." Appellant's Appendix at 89. Thus, there was no faulty premise which may warrant reversal.

and the State were prepared to go to trial, lasted for approximately ninety-seven minutes. In addition, Byfield did not call his former attorney as a witness during his hearing on his motion to withdraw his plea and thus the trial court could have inferred that his attorney would have testified otherwise had he been called. Coomer v. State, 652 N.E.2d 60, 63 (Ind. 1995).

Finally, we note that Byfield contends that he did not receive a favorable outcome despite his guilty plea. However, the plea agreement entered into by Byfield specifically left sentencing to the court and Byfield does not claim that the State did not follow through with any of the terms negotiated and included in the agreement. "A mere hope for a certain outcome at sentencing, without more, does not suffice to set aside a guilty plea for lack of voluntariness." State v. Moore, 678 N.E.2d 1258, 1267 (Ind. 1997), cert. denied, 523 U.S. 1079 (1998). In sum, there was no manifest injustice that would require granting Byfield's motion to withdraw his guilty plea. Moreover, Byfield has not overcome the presumption in favor of the trial court's ruling on the motion to withdraw his guilty plea and we find that the trial court did not abuse its discretion by denying the motion.

## II. Inappropriate Sentence

### A. Standard of Review

This court has the authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). With regard to the "nature of the offense" portion of inappropriate sentence review, the

7

advisory sentence is the starting point. Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). The "character of the offender" portion of the sentence review involves consideration of the aggravating and mitigating circumstances and general considerations. Clara v. State, 899 N.E.2d 733, 736 (Ind. Ct. App. 2009). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant bears the burden of persuading this court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

### B. Nature of Byfield's Offenses and Character

Byfield was convicted of three Class B felonies. The sentencing range for a Class B felony is between six and twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Byfield was given the maximum sentence of twenty years for each count but was ordered to serve them concurrently. Byfield was also found to be an habitual offender. The sentencing range for an habitual offender enhancement is between the advisory sentence for the underlying offense—in this case, ten years—and three times the advisory sentence for the underlying offense—in this case, thirty years—and may generally not exceed thirty years. Ind. Code § 35-50-2-8(h). The trial court enhanced one of Byfield's felony convictions by thirty years due to him being an habitual offender for an aggregate term of fifty years. For purposes of appellate review, the length of the aggregate sentence is what matters. Cardwell, 895 N.E.2d at 1224. Byfield argues his

8

sentence is inappropriate in light of the nature of his offenses and character. We disagree.

Regarding the nature of his offenses, Byfield's behavior was serious and his attack on the victim was brutal. Byfield committed the crimes while in the victim's home and despite her repeatedly refusing his advances. He pulled her back into the bedroom several times to commit the acts of criminal deviate conduct. The trial court found as aggravating circumstances that Byfield committed a crime of violence and knowingly committed the offense in the presence or within hearing of an individual less than eighteen years of age. It also found that the harm, injury, loss, or damage to the victim caused by these crimes was significant and beyond the elements of the crime. In fact, a conviction for criminal deviate conduct does not require proof that the victim suffered bodily injury, see Ind. Code § 35-42-4-2, but, here, the attack caused bruises all over the victim's body, some of which were still visible over one week later.

With regard to his character, Byfield has a history of criminal behavior as both an adult and juvenile. This includes prior felony convictions of aggravated assault, burglary, theft, residential entry, and failure to return to lawful detention. Also, after committing the crimes that are the subject of this opinion, Byfield committed domestic battery in the presence of a child. Byfield's criminal history therefore reflects poorly on his character. In addition, his pre-sentence investigative report indicated that he was at a very high risk to re-offend.

Byfield points to his guilty plea and argues that it demonstrates a level of acceptance of responsibility for his crimes. We first note that the trial court identified his guilty plea as a mitigating factor at his sentencing hearing and in the subsequent

9

sentencing order. In addition, the trial court sentenced Byfield to an aggregate term of fifty years despite the State's recommendation of sixty years.[5] More importantly, under the circumstances, Byfield's decision to plead guilty may have been merely pragmatic because of the strength of the evidence against him.[6] See Amalfitano v. State, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011) ("A guilty plea is not necessarily a mitigating factor . . . where evidence against the defendant is so strong that the decision to plead guilty is merely pragmatic."), trans. denied. Moreover, his plea was made on the morning of the trial after a jury venire had been summoned, and circumstances indicate that he has not accepted responsibility for his actions as he subsequently asserted his innocence and attempted to withdraw his plea. See Caraway v. State, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011) ("A plea's significance is reduced if it is made on the eve of trial, [or] if the circumstances indicate the defendant is not taking responsibility for his actions . . . ."), trans. denied. Thus, Byfield's plea is of limited significance.

In sum, even though he pleaded guilty, Byfield has not met his burden of convincing us that we should take his plea into account any more than the trial court already has. In light of the brutal nature of his offenses and his poor character, we conclude that his fifty-year sentence is not inappropriate.

### III. Abstract of Judgment

Byfield also briefly notes that his abstract of judgment states that he was sentenced to fifty years for his habitual offender enhancement when his sentence for the

---

[5] During the sentencing hearing, the State informed the court that at the time of the plea negotiations it had incorrectly told Byfield's counsel that the single episode of criminal conduct rule would limit Byfield's aggregate sentence to sixty years and thus the State read into the plea agreement a sixty-year cap on his sentence. Tr. at 88-89.

[6] There were several witnesses, including the victim, prepared to testify against Byfield.

enhancement was actually thirty years, and requests that we remand for the purpose of correcting this error.[7] We note that this appears to have been a scrivener's error, and remand to the trial court with instructions to correct the abstract of judgment to reflect Byfield's thirty-year sentence for his habitual offender enhancement.[8]

## Conclusion

The trial court did not abuse its discretion when it denied Byfield's motion to withdraw his guilty plea. Moreover, his sentence is not inappropriate in light of the nature of his offenses and character. We therefore affirm his convictions and sentence. We remand, however, to the trial court for the limited purpose of correcting Byfield's abstract of judgment to reflect the actual sentence he received for his habitual offender enhancement.

Affirmed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.

---

[7] The State does not address this request in its brief.

[8] An amended abstract of judgment appears in the record but it also erroneously states that Byfield was sentenced to fifty years for being an habitual offender.

11